[Civil No. 4041. Filed March 27, 1939.]

[88 Pac. (2d) 536.]

EDNA A. MUNGER and CHARLES P. MUNGER, Her Husband, Appellants, v. ELEANOR B. BOARDMAN, a Widow, Appellee.

Mr. Stephen B. Rayburn, for Appellants.

Messrs. Marks & Marks, for Appellee.

ROSS, C. J.—Plaintiff Eleanor B. Boardman, a widow, on February 10, 1938, filed this action against the defendants Edna A. Munger and Charles P. Munger, her husband, to foreclose a realty mortgage. The court granted plaintiff's prayer and entered a decree foreclosing the mortgage. Defendants have appealed.

The facts, as they appear from the pleadings and competent evidence, are as follows: On January 28, 1925, Frank Deiter and Mary Deiter, husband and wife, were the owners of Lot 21 in Wise Addition to Phoenix, Arizona, and on that date they made, executed and delivered a mortgage on said lot to Blanche Burnett to secure their note to her for $1,000, due January 28, 1928, and drawing interest at 8 per cent. payable semi-annually. Thereafter, on the same date, the defendant Edna A. Munger took a deed in her name to said lot *subject* to the Burnett mortgage, and paid the purchase price with the funds of the community, consisting of herself and her husband Charles P. Munger, also a defendant.

On January 28, 1928, the date the note and mortgage became due, Blanche Burnett, the mortgagee, entered into an agreement in writing, duly acknowledged, with Edna A. Munger "to extend the time of the payment thereof up to and until the 28th day of January, 1934," and in such agreement it is recited:

"Now, therefore, in consideration of such extension, the said Edna P. Munger, assignee of said Frank Deiter and Mary Deiter, agrees to pay said promis-

sory note, with the specified rate of interest thereon, upon the said mortgage, on 28th day of January, 1934, and if paid before said date that will pay to said Blanche A. Burnett 30 days advance interest or give 30 days notice.''

Defendants' answer admits the execution of this agreement but claims that the extension was to run until the 28th day of January, 1931, and not to 1934. Defendant Edna A. Munger, as alleged in the answer, ''in behalf of the community,'' thereafter paid delinquent taxes on the lot for the years 1933, 1934 and 1935. In 1934, at the request of said Edna, the interest rate was reduced from 8 per cent. to 6 per cent. and she, ''in behalf of the community,'' paid the interest up to July 28, 1934, amounting to $120, and each six months thereafter paid the interest at 6 per cent. to July 28, 1937.

In the mortgage it was provided the mortgagors should keep the building on the said lot insured in favor of the mortgagee in the amount of the mortgage, which was $1,000. On February 1, 1934, Edna A. Munger procured an insurance policy from the Milwaukee Mechanics' Insurance Company, Milwaukee, Wisconsin, for $1,000 in her favor on the mortgaged property, for three years, and caused to be attached thereto as a rider a mortgagee clause to the effect that the loss or damage, if any, should be paid to the ''Blanche Burnett Estate . . . as interest may appear,'' thus recognizing the lien of the mortgage. There were attached to the policy riders as follows: One dated November 22, 1934, at Phoenix, Arizona, which provided:

''The interest of the estate of Blanche A. Burnett in the mortgage in connection with which this policy of insurance was executed having been distributed by an order of court to Mary M. Burnett, a widow, and Eleanor B. Boardman nee Clarkson, this endorsement

is hereby attached and said transfer is hereby recognized.

"All other terms, limits and conditions remain unchanged.

"MUNGER INVESTMENT COMPANY
"By E. A. MUNGER, Agent."

Another dated July 30, 1936, at Phoenix, Arizona, which provided:

"Mary M. Burnett, joint owner of the mortgage on the within described property, being deceased, it is understood and agreed that this mortgage now stands in the name of:

"J. Otis Sullivan, Executor of the Estate of Mary M. Burnett and Eleanor B. Boardman nee Clarkson.

"MUNGER INVESTMENT COMPANY
"By E. A. MUNGER, Agent."

On February 1, 1937, Edna A. Munger procured from the same insurance company a policy on the same property, running to her. This policy was for three years from its date, or until February 1, 1940, and in the sum of $1,000. To it also was attached a mortgagee clause providing that loss or damage, if any, should be payable to "Eleanor B. Boardman, a widow, . . . as interest may appear," again recognizing the mortgage lien.

Edna A. Munger during all the time was engaged in the real estate business and was acting as an insurance agent under the trade name of Munger Investment Company, and in her trade name countersigned the said insurance policies and riders.

Under these facts plaintiff, who succeeded to the ownership of the note and mortgage given to Blanche Burnett, claimed at the trial that the mortgaged property was the separate property of defendant Edna A. Munger, and defendants claimed that it was community property. Defendants in that connection interposed the six-year statute of limitations against plain-

tiff's cause of action. Section 2062, Rev. Code 1928. The Deiters were not made parties.

The court concluded that the property was the separate property of Edna A. Munger and held the mortgage lien was not barred, foreclosed the mortgage and directed that the property be sold to satisfy the debt secured. The court thus adopted plaintiff's theory of the case.

Defendants on this appeal really raise but two questions for the court's consideration. They are whether the mortgaged property belonged to the community or to Edna A. Munger as her separate property, and whether the mortgage lien was barred. It is clear to our minds that the defendants' theory as to the character of the property is correct and that it belongs to the community. Both the defendants testified that it was paid for out of the community assets, and there is no testimony to the contrary. It appears in defendants' answer that Edna A. Munger, in purchasing and otherwise handling and looking after the property, was the agent of the community. We conclude therefore that the trial court was in error in holding the property belonged to Edna A. Munger as her separate property.

Notwithstanding, the judgment for plaintiff was correct, in that it reached the right result.

The defendants, acting by and through their agent, bought the lot *subject* to the mortgage. They did not, in terms, at the time agree to pay the mortgage, but they knew that unless they paid it the mortgagee, or her assigns, could foreclose and sell the property, and that they would have to redeem or lose the property and whatever they had paid thereon. It is certain that the face of the mortgage was deducted from the purchase price, and that what was paid the Deiters was $1,000 less than the price of the property. In other words, if the property had been clear, the Deiters'

price would have been, in addition to what defendants paid, the face of the mortgage. This is recognized by defendants in asking for a reduction of interest from 8 per cent. to 6 per cent., and in paying the interest, and in insuring the mortgage debt against loss by reason of the property's destruction or damage by fire, and finally in asking the owner or owners of the mortgage not to foreclose it when due, and in procuring from such owner or owners an agreement not to sue on the promise of Edna A. Munger to pay the Burnett note and mortgage.

It will not do for defendant Charles P. Munger to say he did not participate in the negotiations concerning the property. His wife was his or the community's agent in buying the property and in every step thereafter, and all her acts and admissions and representations and agreements were the acts, admissions, representations and agreements of the community.

██ Under the law, neither spouse may encumber, by mortgage or lease or otherwise, or sell or dispose of community realty without the consent of the other. It is necessary that they join in any such transaction affecting realty of the community. Defendant seems to be laboring under the belief that the agent of the community (Edna A. Munger), in seeking and securing from the owners of the mortgage an extension of time for foreclosing it, thereby encumbered the property. This is not so in fact or in law. She gave no mortgage. She placed no encumbrance upon the property. The mortgage was on the property when the community bought it, and all the community did was to ask for time in which to pay the obligation and it was granted to them upon the condition that they assume the payment of the note and mortgage.

█ If there ever was a plainer case of estoppel, it is difficult to imagine it, and such estoppel appears from the admitted facts pleaded. It might be sug-

gested that plaintiff did not plead estoppel. The fact is that the word "estoppel" does not appear anywhere in the pleadings or the briefs, but it is so obviously in the case that it cannot be ignored. In *Insurance Company of North America* v. *Williams,* 42 Ariz. 331, 338, 26 Pac. (2d) 117, 120, this court said:

" . . . The first contention of defendant is that an estoppel must be specially pleaded. This is true, but it need not be pleaded by name, and if the facts as set forth in the pleadings show an estoppel that is sufficient to raise the issue. . . . "

This, in a nutshell, is the case we have here. Estoppel was not mentioned or argued by either of the parties in his brief and there is a very good reason for it. If, as plaintiff contended and as the court decided, the property was Edna A. Munger's separate property, estoppel, so far as Charles P. Munger is concerned, had no place in the case. Its impact would become potent only after a determination in accordance with defendants' theory that the property was community, and of course defendants would not argue or suggest estoppel was involved in their defense. The less said about that equitable principle was to their interest. If the trial court had concluded that the property belonged to the community, then it may well be imagined plaintiff would have argued most strenuously that the facts constituted an equitable estoppel.

The court, by applying the rule of equitable estoppel, will prevent injustice and wrong. In 10 Ruling Case Law, 689, section 19, it is observed that the facts of each case must be looked to and applied by analogy rather than by rule in equitable estoppel. The author ventures this general definition:

" . . . That a person is held to a representation made or a position assumed, where otherwise inequi-

table consequences would result to another who, having the right to do so under all the circumstances of the case, has, in good faith, relied thereon. Such an estoppel is founded on morality and justice, and especially concerns conscience and equity. . . . "

Evidently plaintiff and her predecessors did not bring suit to collect the Deiter note and mortgage at an earlier date because they were relying upon defendants' promise that they would pay the debt, and especially upon the conduct of the defendants in paying interest and taxes and in securing, as the mortgage provided, insurance up to February 1, 1940, to protect the mortgagee's interests in case the improvements on the mortgaged premises should be destroyed or damaged by fire. This conduct would naturally lull the owner of the security into a belief that the defendants fully intended to pay the note and mortgage. The plaintiff honestly and in good faith relied upon such promises and acts and, it seems, had a right to do so. If defendants are permitted to change their position and now plead the statute of limitations it will result in their enrichment and unjustly injure and damage the plaintiff.

Defendants also say that the property is community property because it was paid for with community assets. However, the property will not be entirely paid for until the note and mortgage which Edna A. Munger agreed to pay is discharged by defendants. How could a clearer case for estoppel exist as against Charles P. Munger, who ratified his wife's purchase of the property with community assets but undertakes to repudiate her promise to pay the note and mortgage, or the rest of the purchase price. If she was the agent of the community in any part of the transaction, she was such agent in the whole transaction. If she paid community assets on the original purchase as the agent of the community, she promised

to pay the note and mortgage as such agent. So, the amount she assumed and agreed to pay was a community debt or liability.

We know of no reason in fact or law why the wife may not act as the agent of her husband, or the agent of the community with the husband's consent. 2 Am. Jur. 23, sec. 17; 13 R. C. L. 1177, sec. 206. That is what she did here. The husband may not claim the benefits of the contract and repudiate the burdens. He is estopped from doing so. *Hall* v. *Weatherford,* 32 Ariz. 370, 259 Pac. 282, 56 A. L. R. 903. In this last case this court held that the wife by her conduct was estopped from denying the validity of a lease of hotel property by her husband, although the statute prohibits any encumbrance upon the community property without the joint signatures of the husband and wife.

The trial court found as a fact:

" . . . That in various ways the lien of the mortgage on said property was extended from time to time. That some time about the month of July, 1934, an oral agreement was entered into between the plaintiff and the defendant Edna A. Munger, extending the lien of the mortgage for a period of three years. That no written instrument was ever executed extending the time of the payment of the note. . . . "

(This last sentence is in error for it is admitted by the pleadings that there was a written extension, the defendants saying until January 28, 1931, and plaintiff until January 28, 1934.)

41 Corpus Juris, 808, section 952 (c), reads as follows:

"An agreement by a mortgagee to extend the time for payment of the debt secured by a mortgage, whether indorsed on the instrument or otherwise evidenced, will continue the lien of the mortgage and all his rights and remedies thereunder for the new period.

Such agreement may be made without the formality of a sealed instrument; it may be made out by a mere parol promise, unless otherwise provided by statute; . . ."

See, also, *Button* v. *Wakelin,* 41 Ariz. 84, 15 Pac. (2d) 956, for a construction of section 2308, Revised Code of 1928.

 Under the court's findings, the cause of action, because of the extensions, was not barred by the six-year statute of limitations.

The case was tried upon two theories and was decided by the court in favor of plaintiff's theory. However, upon a full consideration of the facts and law, we are satisfied that the defendants' theory as to the character of the property was correct. We think the decision was erroneous in its reasoning in some respects but that it arrived at the correct conclusion, and that the judgment should therefore be affirmed. It is so ordered.

McALISTER, J., concurs.

LOCKWOOD, J., Dissenting.—Plaintiff filed this action against the defendants, Edna A. Munger and Charles P. Munger, her husband, to foreclose a realty mortgage. In her amended complaint, on which the case was tried, she alleged that the mortgage had been placed on the property by other parties who later conveyed it to Edna A. Munger and that the latter had thereafter dealt with it as her separate property, and in so doing, in the year 1935, at her request a written extension of the mortgage to January 28, 1937, had been executed between the plaintiff and herself. There were further allegations as to various payments of insurance, interest and taxes, and the prayer was for relief that Edna A. Munger be required to pay the note which the mortgage secured, and for the foreclo-

sure of the mortgage against the latter alone. No relief whatever was asked for as against Charles P. Munger, and there was not even a suggestion in the pleading that the property was the community property of the two defendants, or that in dealing with it Edna A. Munger had acted as agent of the community, or that Charles P. Munger had anything to do with any of the transactions between plaintiff and Edna A. Munger concerning it.

The answer of the defendants set up that the realty in question was community in its nature; alleged that the only extension of the mortgage made expired on the 28th of January, 1931; denied the written extension of 1935 pleaded by plaintiff, and set up the statute of limitations as a defense. Nowhere in the answer was there any suggestion that defendant, Edna A. Munger, had been authorized to make, or had made, any extension of the mortgage as agent of the community, or that Charles P. Munger had made any representations of any nature whatever to plaintiff in regard to the mortgage, except that he had refused to sign any extension thereof. On these pleadings the case went to trial.

From the statements made by the court and by counsel at the trial it is evident that the only issues considered by any of them as being litigated were (a) was the mortgaged property the separate property of Edna A. Munger, as insisted by plaintiff, or the community property of Edna A. Munger and Charles P. Munger, as contended by defendants; and (b) if it were separate property, did Edna A. Munger make an extension of the mortgage.

All of the evidence in the record was directed to those propositions, and to those alone. There was never a suggestion in the testimony of any of the witnesses that Edna A. Munger was authorized to act as

agent of the community in her transactions with plaintiff; that she claimed to represent, or that plaintiff believed that she did represent, the community as its agent, or that her husband, Charles P. Munger, ever did anything which would suggest to plaintiff that she was authorized to act as agent of the community. The trial court, in rendering its judgment, held that the evidence showed the realty was the separate property of Edna A. Munger, and that she individually had agreed to an extension of the mortgage, but it never suggested that she at any time acted or represented herself as being the agent of the community, or that Charles P. Munger, her husband, had ever made any representations of any nature whatever in regard to the character of the property, or Edna A. Munger's interest therein or her right to deal with it. The judgment of the court was rendered in favor of plaintiff solely on the theory that the realty was the separate property of Edna A. Munger.

On appeal it was not suggested by either party that the question of agency or estoppel was in any way involved in the action, either by the assignments of error or the briefs.

The majority of this court has come to the conclusion that there is no evidence in the record which will sustain the finding of the trial court that the realty in question was the sole and separate property of Edna A. Munger, but, on the contrary, holds the evidence is conclusive to the effect that it is the community property of Edna A. Munger and Charles P. Munger, and always was. With this conclusion I agree most emphatically. It would seem that this would require a reversal of the judgment, for the issue upon which the trial was had and the judgment was based by the lower court was found to have been erroneously decided.

But, says the majority opinion, notwithstanding all of this, we are satisfied that the judgment should be affirmed on the ground of estoppel. The question naturally arises as to who is estopped, and what are they estopped from doing. In view of the fact that the majority has held the property is community in its nature, it would seem the person estopped is Charles P. Munger, and that the estoppel must be either (a) from contending that the property was not the separate property of Edna A. Munger but was, in fact, community in its nature, or else (b) from contending that Edna A. Munger was not authorized to act as the agent of the community in her transactions regarding the mortgage, or from both contentions.

We have held that the essential elements of estoppel are that the party estopped, with full knowledge of the facts, must have asserted a particular right inconsistent with one which he later sets up to the prejudice of another who has relied on his first conduct. *Peterson v. Hudson Ins. Co.*, 41 Ariz. 31, 15 Pac. (2d) 249; *Insurance Co. of North America v. Williams*, 42 Ariz. 331, 26 Pac. (2d) 117; *City of Glendale v. Coquat*, 46 Ariz. 478, 52 Pac. (2d) 1178, 102 A. L. R. 837.

Let us consider the two possible estoppels above referred to. Does it appear by either the pleadings or the evidence, or by the theory upon which the case was tried in the lower court that Charles P. Munger ever represented to the plaintiff that his wife, Edna A. Munger, was the sole owner of the property, or that she was the agent of the community, authorized to deal with the property on behalf of the community, and did plaintiff, *relying on such representations,* or any of them, act thereon to her prejudice? The most meticulously careful reading of the pleadings will fail to show any suggestion that Charles P. Munger ever made any representations of any nature whatever to

plaintiff in regard to the property or the mortgage thereon, or that he ever had anything whatever to do with the plaintiff. All of her transactions regarding the mortgage were with Edna A. Munger alone, and Charles P. Munger was never even present at any of them. And if no representations were made, certainly plaintiff could not have relied on something which did not exist, to her prejudice. Nor does she anywhere, at any time, claim she did so rely. How, then, can it be said that Charles P. Munger was estopped?

It seems to me that the majority of the court has set up a theory of the case not even suggested, let alone stated, in the pleadings, and utterly repudiated by both parties in their evidence, and never considered by the trial court as being among the issues litigated in that court, and not suggested by either plaintiff or defendants even in their presentation of their appeal in this court, and merely because, in the opinion of the majority, it is inequitable to allow the defendants to retain the property in question without paying the mortgage, has affirmed a decision that cannot, so far as I am able to see, be sustained upon any theory of law or fact, and which, in effect, utterly repudiates a principle that has been sustained by this court, in *Tevis* v. *Ryan,* 13 Ariz. 120, 108 Pac. 461, and the many cases following, and which has been upheld by practically every appellate court in the Union for years.

The majority opinion attempts to determine the case upon a theory, both of law and fact, which was not raised by the pleadings nor the evidence, was not presented in the trial court, and which the parties themselves have never litigated nor attempted to litigate. "Equity is not the length of the chancellor's foot," and since the only principle upon which the decision of the majority can stand is a repudiation of this ancient maxim, it is against my protest.