431 P.2d 921

Joseph P. CONNOLLY, a minor, by his guardian ad litem, Margaret Connolly, Joseph A. Connolly and Margaret Connolly, husband and wife, Appellants,

v.

GREAT BASIN INSURANCE COMPANY, a corporation, Appellee.

No. 2 CA–CIV 407.

Court of Appeals of Arizona.

Sept. 12, 1967.

See also 5 Ariz.App. 117, 423 P.2d 732.

Rees, Estes & Browning, by Paul G. Rees, Jr., Tucson, for appellants.

Spaid, Fish, Briney & Duffield, by William S. Spaid, Tucson, for appellees.

MOLLOY, Judge.

This is an appeal from a summary judgment rendered in favor of a liability insurance company against three individuals, who bear to one another the relationship of father, mother, and son, and who will be referred to in this opinion as "the Connollys." The judgment decrees that the Connollys and a certain Donaldson had no coverage under a liability policy issued by the defendant insurance company as to claims arising out of an accident because of provision in the policy excluding coverage for automobiles "furnished for regular use" of the son. In addition to the problem of insurance coverage posed by the briefs, this court finds a problem of "indispensable parties" involved in this appeal.

The facts upon which the judgment below is based were established by pretrial discovery procedures, including depositions, interrogatories and requests for admission. The father and mother, hereinafter referred to as "the parents," were covered by another insurance company, Home Indemnity Company, for liability on two automobiles owned by them, a 1962 Chevrolet Impala, two-door coupe, a 1963 Volkswagen, two-door sedan (neither of these cars were involved in the accident in question). Home Indemnity, because of the driving record of the son, had placed in its liability policy an endorsement excepting all coverage for the son.

The insurance agent from whom the Connollys regularly purchased insurance thereafter attempted to secure insurance for the son through the "Automobile Assigned Risk Plan," with offices in San Francisco, California. This agency referred the request to the appellee, Great Basin Insurance Company, and a policy of insurance was issued with the son as the named insured, which policy is the subject of this appeal. The policy issued was on a standard form usually used to provide insurance for a specific motor vehicle, or vehicles. However, there is no vehicle described in the policy and in that part of the policy in which the

description of the insured vehicle would ordinarily be placed, there were typed the words "NON-OWNER POLICY." Under "Insuring Agreement V" of the policy, it provided coverage for "use of other automobiles," which coverage will hereinafter be discussed in more detail.

The written application in pursuance of which this policy was issued had typed at the beginning: "PLEASE ISSUE A NON-OWNER POLICY." Under "Item 5" of the application, under which there was to be given a description of "ALL motor vehicles owned by applicant or any member of the same household" (the son lived with his parents), there were listed only the two cars covered by the other insurance company. The application under "Item 7" indicated that there were no motor vehicles furnished for the regular use of the applicant or his spouse (the son was not married). As to the two motor vehicles covered by Home Indemnity, it was indicated ("Item 13") that neither vehicle was "owned or principally operated by an unmarried male under 25." The applicant was 18 years of age at the time of the application.

When this application was made, the son had been constructing a custom-built roadster for more than a year, fabricating it out of a 1964 Corvette frame and engine and parts specially purchased. The car was not actually test driven until after the issuance of the Great Basin liability policy. Registration for the car was issued after the policy, and the registration indicated the father to be the owner of the new car.

The policy issued by Great Basin in Insuring Agreement V, pertaining to "Use of Other Automobiles," states in pertinent part:

"V. Use of Other Automobiles. If the named insured is an individual or husband and wife and if during the policy period such named insured, or the spouse of such individual if a resident of the same household, owns a private passenger automobile covered by this policy, such

insurance as is afforded by this policy * * * with respect to said automobile applies with respect to any other automobile, subject to the following provisions:

"(a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes (1) such named insured and spouse, and (2) any other person or organization legally responsible for the use by such named insured or spouse of an automobile not owned or hired by such other person or organization."

\* \* \* \* \* \*

"(d) *This insuring agreement does not apply:* (1) *to any automobile owned by or furnished for regular use to* either *the named insured* or a member of the same household other than a private chauffeur or domestic servant of such named insured or spouse;" * * *." (Emphasis added.)

\* \* \* \* \* \*

At about the time the custom-built roadster began to be used, the parents' insurance agent wrote to Great Basin as follows:

"The named insured may become a principal driver of an automobile owned by his parents. We have excluded coverage for this boy on the family contract and would like to have your recommendations as to what changes, if any, should be made."

To this letter, Great Basin responded that if the named insured became the "principal driver of an automobile owned by his parents," there would be an additional premium, raising the premium from the sum of $288, which had previously been paid by the parents, to the sum of $542. This information, according to the deposition of the insurance agent, was transmitted to the parents, who never indicated that they wished the additional coverage, never paid the additional premium, and hence the Great Basin policy was never changed. The testimony of this insurance agent stands unrefuted. Requests for admissions,

which were not answered by the Connollys, establish for the purposes of this record, Rule 36(a) Rules of Civil Procedure, 16 A.R.S., that the custom-built roadster was a vehicle "bought and maintained" by the parents for the "regular use of the son" and that the son was the "principal driver of said vehicle."

At the time of an accident which occurred on May 17, 1964, a date within the time limits of the Great Basin policy, a Robert Donaldson was driving the roadster, with the son and a Donna Morrison as passengers.

The only tort claims mentioned in the complaint are those of the passenger, Donna Morrison, "against the plaintiffs, Joseph A. Connolly and Margaret Connolly, husband and wife, claiming negligence." The complaint alleges that serious injuries were sustained by the son in the collision in question, but refers to no claims or contentions of liability made by him. There is no suggestion in the record that the parents or Donaldson have any claims arising out of the accident. Neither Morrison nor Donaldson were joined in this action.

The "complaint for declaratory judgment" alleges that "an actual controversy" exists between the parties " * * * relating to the legal rights and duties of the parties under and by virtue of said contracts of insurance by reason of the accident herein before described." It is further alleged that Great Basin has denied " * * * any claims or rights of the plaintiffs * * *" by reason of the subject policy of insurance. These allegations are admitted by Great Basin in its answer.

In dismissing a prior appeal in this action, 5 Ariz.App. 117, 423 P.2d 732 (1967), this court has already noted the lack of specificity as far as the nature of the "actual controversy" between these parties is concerned. The nebulous state of the pleadings in this regard was a factor in causing this court to declare that a previous "judgment" granting a motion for summary judgment was not an appealable order. On remand to the trial court, a judgment was

entered which held, inter alia, that there is "no coverage for the said custom-made roadster under the said policy of insurance upon which this suit is based because of failure of consideration," and:

"There is no liability under the said Great Basin Insurance Company policy for claims arising out of the accident resulting from the use of the said custom-made roadster:

"(A) By or against the minor, Joseph P. Connolly;

"(B) By Donna Morrison, a passenger, against the said minor, the said minor's parents or Donaldson, the driver of the roadster;

"(C) By or against Donaldson, the driver of said roadster."

■ It has been held in this state that in order to give a court jurisdiction of an action in declaratory judgment, sufficient facts must be stated in the complaint so as to establish that there is a justiciable controversy. Kleck v. Wayland, 53 Ariz. 432, 90 P.2d 179 (1939). In *Kleck*, our Supreme Court said, *inter alia*:

"* * * we are satisfied the complaint fails to state facts sufficient to give the court jurisdiction." (53 Ariz. at 437, 90 P.2d at 181)

"Facts should be alleged from which the court could determine for itself whether there exists a real controversy. The plaintiff's allegation that there is such a controversy is a conclusion of the pleader." (53 Ariz. at 438, 90 P.2d at 181)

"* * * but the law insists that there must be an actual controversy upon a present state of facts and not an anticipated one upon an assumed state of facts. It must be a real controversy and not a hypothetical or fictitious one." (53 Ariz. at 439, 90 P.2d at 182.)

The above statements are in accord with the general law. One such statement is as follows:

"The 'actual' controversy which will justify a court's entertaining a suit for declaratory judgment must be a controversy of a 'justiciable nature.' While some courts have found it inadvisable to define the term 'justiciable controversy,' stating that the rule relative thereto depends on the facts of each case, it is generally held that such a controversy must involve something more than a mere difference of opinion; it must involve persons adversely interested in matters in respect of which a declaration is sought. *Furthermore, it has been said that there is no justiciable controversy sufficient to sustain a declaratory judgment action unless the action includes all persons who have or claim an interest affected by the declaration.*" (Emphasis added.) 22 Am. Jur.2d Declaratory Judgments § 11, p. 849. And see 26 C.J.S. Declaratory Judgments § 64b; 26 C.J.S. Declaratory Judgments § 136; Hickey v. City of Portland, 165 Or. 594, 109 P.2d 594; Aralac, Inc. v. Hat Corp. of America, 166 F.2d 286 (3rd Cir. 1948).

As indicated by the above quotation, the problem of "justiciable controversy" is related to that problem of the joinder of parties to be affected by the declaratory judgment. See also Travelers Indemnity Co. v. Standard Accident Ins. Co., 329 F.2d 329 (7th Cir. 1964).

■ Traditionally, parties have been divided into categories of "proper," "necessary," and "indispensable." See Oglesby v. Chandler, 37 Ariz. 1, 288 P. 1034 (1930) and Clarke, Code Pleading (2d ed. 1947), pp. 358–362, 365–367, 380–386. It appears to be the law of this jurisdiction that the failure to join an "indispensable" party is a jurisdictional defect and deprives the court of the power to adjudicate as between the parties already joined. Siler v. Superior Court, 83 Ariz. 49, 316 P.2d 296 (1957); and see Gorsuch v. Fireman's Fund Insurance Co., 360 F.2d 23 (9th Cir. 1966).

Reputable authority holds that in an action to construe a liability insurance policy so as to determine coverage, the injured party who is the potential claimant is an indispensable party to the action. Finley v. Factory Mutual Liability Insurance Co.

38 N.J.Super. 390, 119 A.2d 29 (1955); Updike Investment Co. v. Employers' Liability Assur. Corp., 128 Neb. 295, 258 N.W. 470 (1935); Royal Indemnity Co. v. Hartford Accident & Indemnity Co., 58 N.J.Super. 75, 155 A.2d 270 (1959); Insurance Company of State of Pennsylvania v. Lumbermens Mutual Casualty Co., 405 Pa. 613, 177 A.2d 94 (1962); see Annot. 71 A.L.R.2d Declaratory Judgments—Parties 723, at 747 et. seq.; contra Utah Farm Bureau Insurance Company v. Chugg, 6 Utah 2d 399, 315 P.2d 277 (1957).

The concept of the "indispensable party" has been under attack in law journals. See Hazard, Indispensable Party: The Historical Origin of a Procedural Phantom, 61 Colum.L.Rev. 1254; Reed, Compulsory Joinder of Parties in Civil Actions, 55 Mich. L.Rev. 327 (1957). In partial response to this attack, Rule 19 of the Fed.R.Civ.Proc. has been amended, which amendment has been adopted in this state effective as of October 31, 1966 (after the ruling granting summary judgment below). Rule 19 R.C.P. 16 A.R.S. It is apparent from reading the note of the Arizona State Bar Committee on Civil Procedure and the comment of the Federal Advisory Committee which is referred to in this note, which accompany the new Rule 19 (see pocket part to 16 A.R.S.), that it was the intent of the drafters of the amendment to downgrade, if not eliminate, the concept of the "indispensable party." [1]

The attackers of the "indispensable party" concept argue that inasmuch as parties who have not been joined in the action cannot be bound by the judgment, they cannot be indispensable, and that what courts have been talking about for many years is a matter of propriety revolving around considerations of inconvenience to the parties and the social interests in the expeditious administration of justice. Reed, Compulsory Joinder of Parties in Civil Actions, 55 Mich.L.Rev. 327, at 330. And see Hazard, supra.

That the concept of indispensable parties has a valid basis, arising out of concepts of due process, is argued in another oft-cited law review article. Fink, Indispensable Parties and The Proposed Amendment to Federal Rule 19, 74 Yale L.J. 403 (1965). It has been held that the problem of indispensable parties is one involving substantive law, as to which there is no authority vested in the rule-making tribunal to amend the law by rule, and that the doctrine is still a part of the law in federal courts, despite new Rule 19. Provident Tradesmen Bank & Trust Co. v. Lumbermens Mutual Casualty Co., 365 F.2d 802 (3d Cir. 1966), cert. granted Provident Tradesmen Bank & Trust Co. v. Patterson, 386 U.S. 940, 87 S.Ct. 972, 17 L.Ed.2d 872 (Feb. 27, 1967).

■ It is very apparent that in raising the question of the jurisdiction of the court to entertain the subject action and to enter the judgement rendered, as we feel we should *sua sponte*, McShan v. Sherrill, 283 F.2d 462, 464 (9th Cir. 1960) and see 3 Moore, Fed.Prac. (2d Ed. 1963) § 19.05 p. 2147, we are entering an area of law that is less than certain. We recognize that the Declaratory Judgments Act of this state should be liberally construed so as to accomplish the purposes for which the Act was designed. Podol v. Jacobs, 65 Ariz. 50, 173 P.2d 758 (1946). But we are in a time when our judicial system is overloaded and there is a strong social interest in not burdening that system with litigation that may serve no real purpose.

That parties not joined are not bound by declaratory judgment is spelled out in the Act itself:

"* * * no declaration shall prejudice the rights of persons not parties to the proceeding." A.R.S. § 12–1841.

To devote judicial time and effort to determining that there is or is not coverage

---

[1]. I. e., the Federal Advisory Committee refers to this concept as being the result of a "familiar confusion." Page 34 of the 1966–67 pocket part to Vol. 16 of A.R.S.

under the subject policy as to claims of persons who may subsequently require the court to go through similar proceedings, and reach, possibly, opposite results, at least borders upon a misuse of judicial facilities. In "Developments in the Law—Multi Party Litigation," 71 Harv.L.Rev. 874, 880 (1958), it is said:

> "When courts do articulate the policies which underlie their decisions to treat particular parties as indispensable they consider three factors: (1) the unfairness to those present of proceeding without an absent party; (2) the effect on the absentees of a determination of the controversy before the court; and (3) the court's ability to determine finally the rights of the parties before it in a manner which cannot be aborted by action of an absent party. In applying these factors to a particular case, a court should weigh the unfairness or impropriety of proceeding without an absentee, as determined by considering these three factors, against the strong interest in deciding, to the extent that it can, the controversy before it."

We are concerned particularly with the third factor enumerated above. Whether we view the problem presented by the broad coverage of this judgment from the standpoint of "justiciable controversy" or from that of "indispensable party," we conceive that this judgment went beyond that which was proper. The Declaratory Judgments Act was not intended to constitute the court a "fountain of legal advice." Dobson v. Ocean Accident & Guarantee Corp., 124 Neb. 652, 247 N.W. 789, 790 (1933). To allow this judgment to stand with all of its broad encompassment, not only renders the consideration of the problems presented on appeal. difficult, but we believe creates a judicial "nuisance," in the language of Royal Indemnity Co. v. Hartford Accident & Indemnity Co., 155 A.2d 270, 272, supra. In the procedural posture of this case, we see no justification in attempting to determine, for instance, whether Donna Morrison, not a party to this action, has an insured tort claim against Donaldson, also not a party to this action. Nor do we believe it proper to adjudicate as to claims which, as far as the pleadings are concerned, do not exist.

We recognize that the desires of the particular litigants before the court to secure an early adjudication as to their particular vis-a-vis controversy should have influence in making a final determination as to the indispensability of a party. For this reason, we reject what we consider to be the overly rigid holdings, supra, which implacably require the presence of the injured claimant as a party. In attempting to salvage something from the considerable time and effort expended in litigating this case to this point, we believe it appropriate for this court to eliminate issues not ripe for judicial decision and to confine judicial attention to those properly before the court. See Shelby Mutual Insurance Co. v. Williams, 152 Conn. 178, 205 A.2d 372 (1964); and Condenser Service & Engineering Co. v. American Mutual Liability Insurance Co., 45 N.J.Super. 31, 131 A.2d 409 (1957).

We can see an interest in the insured which is separable from the interests of an injured claimant as to this matter of liability insurance coverage. Whether or not the insured is entitled to be *protected* from suit, both in the providing of a defense to litigation and in the saving harmless from process issued out of litigation, is an interest different from that of the injured person, whose interest is in *recovering* compensation. Once a claim of liability against a person who contends he has liability insurance protection is actually being made, if such contention is denied by the insurance company, we hold that a justiciable controversy exists between these two which may be litigated in the absence of the tort claimant without jurisdictional defect, providing the substance of this controversy is laid before a court of competent jurisdiction by appro-

priate allegations in an appropriate pleading.[2]

■ Accordingly, we hold that those portions of the judgment pertaining to the liability of Great Basin as to the claims of Morrison against the parents, which claims are described in the complaint, were properly before the court for determination. All other adjudications as to liability which are contained within the subject judgment are considered by this court to be void, under the authorities cited above.[3]

We now address ourselves to the problem of contract construction presented by the controversy between the parents and Great Basin as to whether the parents are entitled to protection under this policy as to the claims made by Morrison against them. As in Arizona Land Title & Trust Co. v. Safeway Stores, 6 Ariz.App. 52, 429 P.2d 686 (Filed 5 July 1967), both parties contend that the contract is clear and unambiguous. Unlike the *Arizona Land* case, however, we here have well developed the circumstances surrounding and leading up to the issuance of this insurance policy.

■ Generally, provisions specially typed into a policy control over form provisions, 44 C.J.S. Insurance § 295, p. 1162; 29 Am.Jur. Insurance § 255, p. 638. We are of the opinion that the words "Non-Owner Policy," typed on the face of this policy in that area where the designation of the insured vehicle was to be, when considered with the circumstances surrounding the inception of this contract, make it reasonably clear that this is not an insurance contract pertaining to any particular motor vehicle or vehicles, but rather falls into the general classification of an "operator's policy."

The following general discussion on the difference between an ordinary vehicle liability policy and an "operator's" or "nonowner's" policy is appropriate to focus the mind of the reader on the problem at hand:

"Any discussion of the law relating to "operator's" or "nonowner's" insurance should begin with the observation that the typical automobile liability policy insures the owner of a specified vehicle against liability from his operation of that vehicle, and while coverage may be extended in particular policies to include the operation of the *specified vehicle by certain other persons,* or to permit the insured to operate a particular substitute or replacement vehicle under

---

2. Under the new Rule 19, we believe that the trial court still would have a duty to cause the injured party to be joined in the action "if feasible."

3. We are reinforced in our determination to eliminate from consideration any determination as to liability for any claim that Donna Morrison might make against the son when we consider that one of the son's principal contentions on appeal as to liability was hardly submitted to the trial court at all. One of the contentions advanced by the son is that the provisions of A.R.S. 28–1170, subsec. C are written into this policy under the reasoning of Jenkins v. Mayflower Insurance Exchange, 93 Ariz. 287, 380 P.2d 145 (1963). This section reads as follows:

"The operator's policy of liability insurance shall insure the person named as insured therein against loss from the liability imposed upon him by law for damages *arising out of the use by him of any motor vehicle not owned by him,* within the same territorial limits and subject to the same limits of liability as set forth in subsection B of this section with respect to an owner's policy of liability insurance." (Emphasis added.) A.R.S. 28–1170, subsec. C as amended Laws of 1961, Ch. 94 § 4.

An examination of the record below reveals that while the *Jenkins* decision was called to the attention of the trial court, it was *only* in connection with an argument that this is a standard form vehicle policy and that an "omnibus clause" is contained in the policy under the Jenkins decision. That this is a substantially different contention than that the son has protection under A.R.S. 28–1170, subsec. C is evident from the wording of the applicable statute, which, in those provisions pertaining to an operator's policy, has no "omnibus clause" requirement.

specified conditions, such a policy affords no general liability coverage *for damages arising from the insured's operation of vehicles neither described therein nor otherwise encompassed by one of the extensions of coverage.*

The emphasis on the operator's policy, on the other hand, is on the person rather than the vehicle, and it is designed to insure against liability where the vehicle causing the damage either was not generally covered by an owner's policy or was operated by one to whom the owner's coverage did not extend."

(Emphasis supplied) 88 A.L.R.2d Anno: Insurance—Operator's Policies § 2, pp. 997-98.

As in many other states, see 88 A.L.R.2d at p. 998, our financial responsibility act divides motor vehicle liability policies into two broad categories, an "owner's policy" and an "operator's policy." A.R.S. 28-1170. While we do not suggest that other types of liability policies covering motor vehicles are not possible, we believe that this general law resolves whatever ambiguity that may have been inherent in the language of the subject policy. This policy falls into the broad category of an "operator's policy" and is not a policy covering a specific vehicle. There is no specific vehicle to which this policy could have been intended by the parties to attach.

We are therefore unable to agree with the contention of the parents that the "omnibus clause" of "Insuring Agreement III" provides any coverage for the roadster's accident. Both this clause, and all other insuring agreements in this section of the policy refer to *"the* automobile" (emphasis added) which we conceive was nonexistent for the purposes of this policy.

We also reject the parents' contention that inasmuch as they might be legally responsible for the use of this vehicle by Donaldson, having provided it to their son, who permitted Donaldson to drive it, they are covered by the omnibus clause in "Insuring Agreement V." As part of this particular insuring agreement there is express language excluding any coverage as far as this roadster is concerned (see subsection (d) of this "Agreement V" pertaining to automobiles furnished for the "regular use" of the named insured quoted above). We hold that the parents were not insured under this policy as to the claims of Morrison.

The Connollys also complain on appeal that the lower court wrongfully denied a motion for discovery as to certain correspondence in the files of an insurance adjuster employed by Great Basin. All of such correspondence was created after the accident in question. The burden of establishing "good cause" under Rule 34, Rules of Civil Procedure, 16 A.R.S., is upon the moving party. 4 Moore's Fed. Prac. (2nd Ed.) § 34.08, p. 2449.

Rule 34 permits discovery only as to things which are "relevant to the subject matter involved in the pending action". See Rule 26(b), Rules of Civil Procedure, 16 A.R.S. The test of relevancy is not as strict as that which governs admissibility of evidence at trial. See 4 Moore's Fed.Prac. (2nd Ed.) § 34.10, p. 2459. However, the documents or things to be produced should have some relationship to a claim or a defense in the case. Dean v. Superior Court in and for Maricopa County, 84 Ariz. 104, 324 P.2d 764, 73 A.L.R.2d 1 (1958). The question of whether "good cause" has been shown depends upon the particular circumstances of the case and some measure of discretion is reposed in the trial court in this regard. Watts v. Superior Court, 87 Ariz. 1, 347 P.2d 565 (1959).

In their motion to produce, the plaintiffs stated:

"That it is material and necessary for the plaintiffs to have access to the information contained in said documents and materials in order to establish that defendant insurance companies afford coverage at the trial of the action, to defend the lawsuit No. 86210 in which they are the

defendants as well as for the purpose of impeachment. It is also material that the content of the listed items be known to plaintiffs so that plaintiffs will not be surprised at the trial on the issues."

On a motion to reconsider a denial of the motion to produce, it was indicated the documents sought might contain "admissions and material matters to the insurance coverage questions" or might indicate " * * * what adjuster did, what the companies did and failed to do, and *whether estopped to deny* or *waived the coverage.*" (Emphasis added.) Other than these general conclusions, there were no specific facts presented to the court to indicate how or why the correspondence sought might have some bearing upon the issue of insurance coverage in litigation.

In the lower court the only mention of estoppel is that quoted above from the motion for rehearing of the denial of the motion to produce. There is no mention of estoppel in the pleadings. On appeal, the *only* argument made as to why the trial court erred in denying the motion to produce is that the correspondence might have disclosed that the insurance company was estopped to deny coverage in that it conducted an investigation of this accident. The contention made is, in effect, that a specific exclusion in a policy may have been nullified under the doctrine of estoppel.

It seems to be well-established law that it is more difficult to extend insurance under doctrines of waiver and estoppel than to avoid a forfeiture:

> "It is a rule of general application in most jurisdictions that the doctrines of waiver and estoppel are not available to bring within the coverage of an insurance policy risks not covered by its terms, or expressly excluded therefrom." 1 A.L.R. 3d Insurance Coverage—Estoppel— Waiver § 3, p. 1147. See also 29A Am. Jur. Insurance § 1135, p. 289.

The above statement is supported by numerous cases in the above-cited annotation. The view usually taken by the courts is that it is not just to require the company "to pay a loss for which it charged no premium" (1 A.L.R.3d 1144). Contrary cases from a few jurisdictions are annotated at 1 A.L.R.3d, p. 1150.

Generally, estoppel, whether the basis of a claim or a defense, must be specially pleaded, 28 Am.Jur.2d Estoppel and Waiver § 135, pp. 804–805; 31 C.J.S. Estoppel § 153(1), p. 743; and see Munger v. Boardman, 53 Ariz. 271, 88 P.2d 536 (1939).

There is no indication in this complaint that estoppel was one of the issues before this court. No attempt was made by affidavit or otherwise to show any reliance upon any investigation or other conduct of Great Basin which was detrimental to the plaintiffs. There is no contention made either below or on appeal that the correspondence sought to be discovered could possibly change the meaning of the contract before the court for construction. Under these circumstances, and we conceive the question of law presented to be a close one, we hold that the trial court did not err in denying the motion to produce.

In accordance with the views herein expressed, all those portions of the judgment appealed from determining no liability on the part of Great Basin are set aside except insofar as the judgment pertains to the claims of Donna Morrison against the parents. As to these portions of the judgment holding that there is no coverage under the subject policy as to the claims of Donna Morrison against the parents Connolly, the judgment is affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.