544 P.2d 699

Gerald D. SELLERS, Doris Sellers, Danny Sellers, a minor, Timothy Sellers, a minor, Barbara Sellers, a minor, by and through their Guardian ad Litem, Gerald D. Sellers, Appellants,

v.

**ALLSTATE INSURANCE COMPANY,**
Appellee.

No. I CA–CIV 2557.

Court of Appeals of Arizona,
Division 1,
Department B.

Jan. 6, 1976.

Rehearing Denied March 8, 1976.

Review Granted March 30, 1976.

quired prior to marriage covers her husband's automobile accident after marriage while driving a car acquired by him prior to marriage and not named as an "owned" automobile in the wife's policy.

This litigation arose as the aftermath of an automobile accident occurring on May 26, 1970, involving Jerry Collison (Jerry) while he was driving a 1957 Cadillac, and appellant Sellers. As a result of this accident, Sellers brought suit against Jerry alone which ultimately resulted in a judgment in Sellers' favor in the sum of $830,000.

At the time of the accident, Jerry was married to Evelyn Wagner (Evelyn). Their marriage had taken place on April 1, 1970, approximately 60 days prior to the accident. Prior to the marriage, Jerry owned the 1957 Cadillac involved in the accident, which was insured by State Farm Insurance Company under a policy which had maximum liability limits of $40,000. Also, prior to the marriage, Evelyn owned a 1964 Chrysler which was insured by appellee, Allstate Insurance Company (Allstate). Subsequent to the marriage, Jerry generally drove the Cadillac and Evelyn generally drove the Chrysler. At the time the accident occurred, Evelyn's automobile was inoperative. The accident occurred when Jerry was going to a tavern to have a beer and cash a check, Jerry contending that he would not have made this trip except for the fact he needed some money in his possession when he went to pick up his wife from work because the Chrysler had broken down. He further testified that he probably would not have gone out that evening at all had Evelyn's Chrysler been operative.

The 1957 Cadillac was never added to the Allstate policy nor was there a request prior to the accident to add this automobile to that policy.

Apparently during the course of the investigation by Allstate of this accident (Allstate also insured Sellers), a claims agent of Allstate indicated that Allstate

Matz & Jurkowitz, P.C. by Theodore Matz, Phoenix, for appellants.

Robbins, Green, O'Grady & Abbuhl, P.A. by Robert H. Green, Phoenix, for appellee.

## OPINION

JACOBSON, Presiding Judge.

This appeal asks us to determine whether a wife's automobile insurance policy ac-

would provide excess coverage under Evelyn's policy for the Sellers' accident. Subsequently, on June 30, 1971, Allstate denied any coverage under Evelyn's policy for Jerry's accident. Prior to trial, State Farm offered to Sellers its policy limit in the sum of $40,000. As a result of that offer, and the payment of $40,000, Sellers on October 7, 1971, executed a covenant not to execute, discharging Jerry and Evelyn from any personal liability in exchange for which Jerry and Evelyn assigned their claim against Allstate to Sellers. After obtaining judgment, Sellers caused a writ of garnishment to be issued against Allstate, and Allstate by a tender of issues denied coverage for Jerry's accident. On cross-motion for summary judgment, the trial court granted judgment to Allstate and Sellers has appealed.

Sellers' basic contention on appeal is that the trial court erred in granting summary judgment to Allstate because of material issues of disputed fact arising in three critical areas:

(1) That under the Allstate policy the Cadillac driven by Jerry was an "additional automobile" because Evelyn as the insured acquired a community property ownership in that automobile upon her marriage to Jerry.

(2) That as to Evelyn, the Cadillac was a "temporary substitute automobile" since the Chrysler named under the policy was inoperative and Jerry was using the Cadillac to pick Evelyn up from work, and

(3) That Allstate is estopped to deny coverage due to representations and conduct on the part of several Allstate employees subsequent to the accident.

■ Sellers first contends that the Cadillac became an "additional automobile" and therefore covered under the policy. The pertinent portion of the Allstate policy dealing with this coverage provides that an " 'additional automobile' means an additional private passenger . . . automobile of which the *named insured* acquires ownership."

Sellers contends that *as to Evelyn*, the Cadillac became an "additional automobile" upon her marriage to Jerry by operation of the community property laws of the state of Arizona, thus "ownership" was acquired by *Evelyn* during the term of the Allstate policy. From this premise, Sellers argues that the Cadillac was insured under the Allstate policy.

The problem with Sellers' analysis of the Allstate policy insofar as this provision is concerned, is that in order to make the provision relied upon applicable to the Cadillac, it must be viewed from Evelyn's standpoint. As a matter of law, under the Allstate policy, this provision must be construed as it applies to Jerry, not Evelyn. The Allstate policy clearly provides that the "named insured" under the Allstate policy "means the individual named on the supplemental page [Evelyn], *and his spouse if a resident of the same household.*" It is thus clear that Jerry became a "named insured" on the Allstate policy as of the date of his marriage to Evelyn. *Boyd v. United States Fidelity & Guaranty Co.*, 256 So.2d 1 (Fla.1971).

As such "named insured" the provisions of the insurance contract granting coverage to an "additional automobile" are applicable to Jerry. The purpose of the additional automobile provision is "to meet the necessity of maintaining coverage based on the recognized custom that insured owners of automobiles may acquire other automobiles by replacement and purchase of an additional automobile during the policy period." R. Long, *The Law of Liability Insurance*, § 4.08, pages 4–16, 4–17; also *see, Farmers Insurance Exchange v. Smith*, 15 Ariz.App. 42, 485 P.2d 866 (1971) and *Taylor v. Aetna Casualty & Surety Company*, 185 So.2d 41 (La.App.1966). This provision is obviously not intended to cover an automobile owned by the "named insured" prior to the time the policy was issued and not named in the policy as an "owned automobile" and for which no premium under the policy was paid. Since Jerry acquired the Cadillac prior to the

time he became a named insured under the Allstate policy, clearly the Cadillac was not an "additional automobile" under the Allstate policy as to its named insured, Jerry.

While superficially this same reasoning can be applied to the "temporary substitute automobile" provision of the policy by pointing out that if Jerry is a named insured, the Cadillac used by him at all times was not a "temporary substitute automobile", this reasoning tends to break down upon analysis of the particular wording of the policy provision. This provision provides:

" 'Temporary substitute automobile' means *any* automobile . . . while *temporarily used as a substitute* for the owned automobile . . . when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction . . . ."

█ Because the Allstate policy uses the words "any automobile", it would appear that an automobile owned by a named insured would fall within this definition (Jerry's Cadillac) if the balance of the definition is applicable. It further appears from the wording of the policy that it is not the "temporary" use in general of the automobile that is definitive of coverage under this provision, rather it is while another automobile is "temporarily used as a substitute" for the automobile named in the policy. A reasonable interpretation of this provision could therefore be that an automobile owned by a named insured and used permanently by him would fall within the coverage of this provision "if temporarily used as substitute" for the named Chrysler which was inoperative. *See, Lumbermens Mut. Cas. Co. v. Harleysville Mut. Cas. Co.*, 367 F.2d 250 (4th Cir. 1966).

The question then becomes, was Jerry's use of the Cadillac a "substitute use" for Evelyn's Chrysler? A substitute automobile has been defined as:

"One actually but only temporarily used in place of the specified automobile, i. e., for the same use the insured car would

have been used except for its withdrawal from all normal use and while such withdrawal is because of its breakdown, repair, servicing, loss or destruction. In other words, it is a vehicle put in place of another." *Fulton v. Woodford*, 17 Ariz.App. 490, 495, 498 P.2d 564, 569 (1972).

█ This concept that the substitute automobile must be "for the same use" as the disabled insured vehicle has to be measured by the *time and the circumstances* involved. *Western Casualty & Surety Co. v. Norman*, 197 F.2d 67 (5th Cir. 1952); *Little v. Safeguard Insurance Company*, 137 So.2d 415 (La.App.1962). The accident giving rise to Jerry's liability in this case occurred while he was on his way to a tavern to buy a beer and cash a check. There is simply no evidence that the Chrysler would have been utilized to make this trip had it been operative. In fact, the evidence is entirely to the contrary. If the Chrysler had been operative, Evelyn would have taken it to work. If this accident had occurred while Jerry was enroute to pick Evelyn up, or returning or if Evelyn had been driving the Cadillac, another factual situation would have been presented which might make the particular policy provision applicable. We do not find that Jerry's subjective intentions, that is, that he would not have gone out that evening at all, if the Chrysler had been running, to be controlling. It is not whether the driver subjectively thought the use involved was a substitute use, it is whether in fact that use was a "substitute use" for the disabled insured vehicle which is material. Under the facts in this case, Jerry was merely using his own vehicle to perform his own errand, which incidentally and possibly later could have been translated into a "substituted use". We therefore hold, as a matter of law, that at the time the accident occurred, Jerry's Cadillac was not being used as a substitute automobile for Evelyn's Chrysler.

█ Turning now to Sellers' last contention that Allstate is estopped to deny

coverage, we find this contention unfounded. Aside from the fact that the doctrine of estoppel will normally not supply insurance coverage where none exists, *Connolly v. Great Basin Insurance Co.*, 6 Ariz.App. 280, 431 P.2d 921 (1967), one of the elements of the doctrine is detrimental reliance by the insured. *Hall v. Motorists Ins. Corp.*, 109 Ariz. 334, 509 P.2d 604 (1973). Here, prior to the time Allstate's insureds, Jerry and Evelyn, entered into a covenant not to execute, they were notified that Allstate was denying coverage under the policy. Thereafter, by reason of the covenant not to execute, the insureds, Jerry and Evelyn, were relieved from all personal liability. We simply fail to see, assuming they initially relied upon Allstate's coverage, how that reliance worked to their prejudice or detriment.

For the foregoing reasons, the judgment of the trial court is affirmed.

HAIRE, C. J., and EUBANK, J., concur.