16 Ariz. App. 407 (1972)
493 P.2d 1212
Manuel PESQUERIA, Appellant,
v.
FACTORY MUTUAL LIABILITY INSURANCE COMPANY OF AMERICA, a corporation, and Automobile Mutual Insurance Company of America, a corporation, Appellees.
No. 2 CA-CIV 1072.
Court of Appeals of Arizona, Division 2.
February 23, 1972.
Rehearing Denied March 22, 1972.
Review Denied April 25, 1972.
*408 Murphy, Vinson & Hazlett, by Carl E. Hazlett, Tucson, for appellant.
Lesher & Scruggs, by James M. Sakrison, Tucson, for appellees.
KRUCKER, Chief Judge.
The case here appealed arose out of an earlier action in Pima County Superior Court entitled "Manuel Pesqueria versus Carolyn Ruth Talbot, Ruth W. Talbot and Warren Talbot," Case No. 94792. In that lawsuit, plaintiff-appellant here, Manuel Pesqueria, filed suit against Mr. and Mrs. Warren Talbot and their minor daughter, Carolyn, for injuries sustained on February 16, 1966, as a result of a collision of plaintiff's car with one driven by Carolyn Ruth Talbot. During the course of that lawsuit, Mr. and Mrs. Talbot moved for summary judgment, which was granted. Following the appeal from the granting of the summary judgment, this court reversed and remanded for a determination of whether this was a "furnished automobile" within the family purpose doctrine. Pesqueira (sic) v. Talbot, 7 Ariz. App. 476, 441 P.2d 73 (1968).
Thereafter, during the pendency of Case No. 94792, the insurance carriers for the Talbots, appellees herein, were repeatedly requested to take over the defense of the lawsuit for the Talbots. Appellees refused and a judgment was granted on 18 June, 1970, in favor of the plaintiff and against the defendants, Ruth W. Talbot and Warren Talbot, in the sum of $150,000. That judgment specifically found that all the allegations of the plaintiff's complaint were true and "that Ruth W. Talbot and Warren J. Talbot owned, provided, controlled, furnished and/or maintained the automobile for their minor daughter who was driving said automobile at the time of the accident."
Appellees in the instant case were the insurance carriers for Ruth W. Talbot. After judgment in Case No. 94792, the Talbots assigned any and all rights against the appellees herein to the plaintiff below. Plaintiff then brought this action as judgment creditor and assignee of the Talbots. The appellees moved for summary judgment, which plaintiff below opposed and in turn moved for summary judgment in his favor. The trial court denied plaintiff's motion for summary judgment and granted the defendant's motion for summary judgment, from which this appeal is taken.
The parties agreed that there were no facts in issue and that the court should *409 decide the questions of law and grant a motion for summary judgment to plaintiff or defendants.
The questions of law here on appeal are:
(1) Whether the contract of insurance for Mrs. Ruth W. Talbot, admittedly in force at the time of the accident in question, included coverage for Carolyn Talbot in a 1965 Corvette under the circumstances here in question; and
(2) Whether the defendants-appellees are liable to Mrs. Talbot's assignee, plaintiff here, for the full amount of the judgment against Mrs. Talbot ($150,000), plus costs and interest, because of their failure to defend Mrs. Talbot against this potential liability.
COVERAGE
In order to effectively analyze appellant's argument for coverage, it is necessary that we first set out the relevant portions of the policy issued to Mrs. Ruth Talbot:
"PART I  LIABILITY
* * * * * *
To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:
A. bodily injury, sickness or disease, including death resulting therefrom, hereinafter called `bodily injury,' sustained by any person;
B. injury to or destruction of property, including loss of use thereof, hereinafter called `property damage':
arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, and the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient.
* * * * * *
Persons Insured
The following are insureds under Part I:
(a) With respect to the owned automobile,
(1) the named insured and any resident of the same household,
(2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, and
* * * * * *
(b) With respect to a non-owned automobile,
(1) the named insured,
(2) any relative, but only with respect to a private passenger automobile or trailer, provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission, and
* * * * * *
Definitions
Under Part I:
`named insured' means the individual named in Item 1 of the declarations and also includes his spouse, if a resident of the same household;
`insured' means a person or organization described under `Persons Insured':
`relative' means a relative of the named insured who is a resident of the same household;
`owned automobile' means
(a) a private passenger, farm or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded,
(b) a trailer owned by the named insured,

*410 (c) a private passenger, farm or utility automobile ownership of which is acquired by the named insured during the policy period, provided
(1) it replaces an owned automobile as defined in (a) above, or
(2) the company insures all private passenger, farm and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company during the policy period or within 30 days after the date of such acquisition of his election to make this and no other policy issued by the company applicable to such automobile, or
(d) a temporary substitute automobile:
`temporary substitute automobile' means any automobile or trailer, not owned by the named insured, while temporarily used with the permission of the owner as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction; `non-owned automobile' means an automobile or trailer not owned by or furnished for the regular uses of either the named insured or any relative, other than a temporary substitute automobile;"
* * * * * *
Appellant argues that this policy's attempt to exclude coverage to Carolyn Talbot under the circumstances here in question is in violation of the Arizona Financial Responsibility Act, A.R.S. § 28-1170, as amended, which has been held constitutional by the Arizona Supreme Court in Schecter v. Killingsworth, 93 Ariz. 273, 380 P.2d 136 (1963). Appellant contends that Jenkins v. Mayflower Insurance Exchange, 93 Ariz. 287, 380 P.2d 145 (1963) held that in Arizona all automobile liability policies must comply with the Arizona Financial Responsibility Act. Appellant would then apply subsec. C of A.R.S. § 28-1170 to the present facts:
"C. The operator's policy of liability insurance shall insure the person named as insured therein against loss from the liability imposed upon him by law for damages arising out of the use by him of any motor vehicle not owned by him, within the same territorial limits and subject to the same limits of liability as set forth in subsection B of this section with respect to an owner's policy of liability insurance."
Appellant reasons that if this provision is applied, the insured, Mrs. Ruth Talbot, must be insured against liability arising out of the use of "any motor vehicle not owned by her" and she would have been covered had she been driving the 1965 Corvette. Since the judgment in Case No. 94792 was based upon the agency theory of the family-purpose doctrine, Carolyn, as her mother's agent, would be covered in "any motor vehicle," including the 1965 Corvette.
We believe the first fallacy of appellant's argument is in the misinterpretation of the Mayflower doctrine. The court's holding in Mayflower, supra, was that the "omnibus clause is a part of every motor vehicle liability policy by whatever name it may be called." (Emphasis added) The "omnibus clause" is not the entirety of A.R.S. § 28-1170 but only subsec. B[1] thereof, regarding *411 an "owner's policy" and the application of this clause to "every" policy was to make clear that no distinction would be made between a "certified" policy and a voluntary policy.
There is, however, a clear distinction between an "owner's policy" described in subsec. B of A.R.S. § 28-1170 and an "operator's policy" described in subsec. C of the statute. This court has previously recognized this distinction in Reserve Insurance Co. v. Staats, 9 Ariz. App. 410, 453 P.2d 239 (1969):
"Motor vehicle liability policies issuable in Arizona under A.R.S § 28-1170, as amended, of the Safety Responsibility Act fall into two general categories: an `owner's policy' and an `operator's policy.' See Connolly v. Great Basin Insurance Company, 6 Ariz. App. 280, 288, 431 P.2d 921, 929 (1967). The essential distinction between the two types of policies is set forth in a passage from an annotation on the subject of operator's policies in 88 A.L.R.2d 995, 997-998, quoted in the Connolly case at 6 Ariz. App. 287-288, 431 P.2d 928-929. In utmost brevity, an owner's policy insures the owner of a specified vehicle or vehicles against liability arising out of their use, while an operator's policy insures the person in the act of operating." 9 Ariz. App. at 411, 453 P.2d at 240.
Mrs. Talbot's policy here in question is clearly an "owner's policy" which in plain and unambiguous terms defines the "owned" automobile as that "described in this policy for which a specific premium charge indicates that coverage is afforded" (a "1963 Chevrolet 8 Sedan"). While the "owned" automobile can also include "a temporary substitute automobile," the clear definition of this phrase excludes the 1965 Corvette since it had been owned and operated by Carolyn Talbot for several months prior to the accident. The 1965 Corvette is also excluded from coverage under this policy as a "non-owned" vehicle since it is owned and regularly used by a relative in the same household.
As the Arizona Supreme Court noted in D.M.A.F.B. Federal Credit Union v. Employers Mutual Liability Insurance Co. of Wisconsin, 96 Ariz. 399, 396 P.2d 20 (1964), and reaffirmed in Home Indemnity Co. v. Wilson, 107 Ariz. 434, 489 P.2d 244 (1971):
"The cardinal principle pertaining to the construction and interpretation of insurance contracts is that the intention of the parties should control. An insurance policy is a contract, and in an action based thereon the terms of the policy must govern. In construing an insurance contract, where there is any ambiguity, or more than one possible construction of the provisions thereof, it is to be construed most strongly against the insurer and in favor of the insured. But, where the provisions of the contract are plain and unambiguous upon their face, they must be applied as written, and the court will not pervert or do violence to the language used, or expand it beyond its plain and ordinary meaning or add something to the contract which the parties have not put there." (Citations omitted) (Emphasis in Home Indemnity) 489 P.2d at 246-247.
We find the language in this policy plain and unambiguous and feel that the terms of this contract of insurance must govern. Mrs. Talbot's affidavit attached to appellees' brief indicates that she knew that her policy afforded no coverage for the operation of the 1965 Corvette which was insured by Carolyn with the Canal Insurance Company.[2]
*412 We hold that Mrs. Talbot's policy with appellees affords no coverage for the 1965 Corvette under the circumstances here in question.
DUTY TO DEFEND
Appellant contends that appellees have committed a second breach of Mrs. Talbot's insurance contract by not providing her with a defense to the litigation in Case No. 94792. We shall begin our discussion of this contention by reiterating the portion of the policy which states the time at which this duty to defend arises:
"... the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient."
Again, we find the language of the policy plain and unambiguous. The duty to defend arises when the allegations of a suit bring it within the "terms of this policy" even though the suit might ultimately prove to be "groundless, false, or fraudulent." Our court has already discussed in detail the duty to defend in Paulin v. Fireman's Fund Insurance Company, 1 Ariz. App. 408, 403 P.2d 555 (1965), which appellant has quoted at length in his brief but apparently never understood. For appellant's benefit we shall quote a brief portion of our opinion in Paulin in hopes of making clear why appellees had no duty to defend in this case.
"In speaking of the insurer's duty to defend groundless, false or fraudulent suits, it is stated in Appleman, Insurance Law and Practice, Vol. 7A, § 4684, p. 448:
`* * * But a distinction must be drawn between groundless suits, and actions which, even if successful, would not be within policy coverage: Since the insurer's duty to defend ordinarily is correlative with its duty to pay a judgment which might be obtained against the insured, it is apparent that the insurer has the duty of defending only those actions that are within the terms of the policy, and where there has been no breach of the policy.'" 1 Ariz. App. at 411, 403 P.2d at 558.
While we do not mean to suggest that appellant's suit in Case No. 94792 was "groundless, false, or fraudulent," we do intend for appellant to understand that the suit was not one which brought it within the terms of the policy. Neither does the fact that the suit was successful bring it within the policy coverage or require appellees to defend. Nor do we find it persuasive that attorneys defending Mrs. Talbot thought that there might be coverage under Mrs. Talbot's policy and that appellees should defend just in case. As we previously pointed out in Paulin, supra, the insurer may be obligated to defend though not held liable to pay, where the allegations of the suit bring it within the coverage of the policy but the insured prevails. And conversely, the insurer may be obligated to indemnify where it had no duty to defend. Journal Pub. Co. v. General Casualty Co., 210 F.2d 202 (CA 9th 1954).
We find that the allegations in Case No. 94792 never brought it within the terms of Mrs. Talbot's policy and therefore that no duty to defend ever arose.
The judgment is affirmed.
HOWARD and HATHAWAY, JJ., concur.
NOTES
[1] "B. The owner's policy of liability insurance must comply with the following requirements:

1. It shall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted.
2. It shall insure the person named therein and any other person, as insured, using the motor vehicle or motor vehicles with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of the motor vehicle or motor vehicles within the United States or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each motor vehicle as follows:" (Emphasis added)
* * * * * *
[2] "3. That after the Corvette was purchased and insured by Canal Insurance Company, she purchased an owners policy of insurance with Factory Mutual Liability Insurance Company of America covering the 1963 Chevrolet which she owned and said policy was effective from December 1, 1965 to December 1, 1966;

4. That she was not paying premiums to Factory Mutual Liability Insurance Company of America or Automobile Mutual Insurance Company of America for coverage of the 1965 Corvette under the owners policy taken out with said companies and she fully understood that said policies afforded no coverage for operations of the 1965 Corvette owned by Carolyn Ruth Talbot."