675 P.2d 1340

**Jon Mark HAGEN, Plaintiff-Appellee,**

v.

**UNITED STATES FIDELITY AND GUARANTY INSURANCE COMPANY, Garnishee Defendant-Appellant.**

**No. 1 CA–CIV 5910.**

Court of Appeals of Arizona,
Division 1, Department D.

Sept. 29, 1983.

Review Granted Dec. 6, 1983.

**522**

Hofmann, Salcito, Stevens & Myers, P.A. by Leroy W. Hofmann, Phoenix, for plaintiff-appellee.

Winston & Strawn by W. Charles Thomson III, Phoenix, for garnishee defendant-appellant.

## OPINION

HAIRE, Presiding Judge.

The primary issues raised in this appeal concern (1) whether the appellant insurer's policy imposed a duty to defend, notwithstanding the admitted exclusion of liability coverage, and if not, (2) whether the insurer could be held liable under implied contract and negligence principles for its alleged failure to make a reasonable effort to advise its insured of its disclaimer of any obligation under the policy. Subsidiary questions are presented concerning (1) whether the plaintiff's assignor was an insured under the policy so as to create a relationship sufficient to support a negligence claim and, (2) assuming that plaintiff's assignor was an insured, the extent of the insurer's liability if it negligently breached its obligations under the policy.

The insurer (USF & G) has appealed from a judgment entered against it in a garnishment proceeding in which the trial court entered summary judgment in favor of the alleged insured's assignee, Jon Mark Hagen (Hagen). The following facts, stated generally in a light most favorable to the insurer, the party against whom summary judgment was entered, furnish the background for the issues raised in this appeal.

In October 1975, appellee Hagen was struck by a truck driven by Glen High. The truck was owned by C & H Roofing, Inc. and insured by USF & G. When this accident occurred, both Hagen and Glen High were employees of the named insured, C & H Roofing, working within the course and scope of their employment, and Hagen has received workmen's compensation benefits relating to the accident. Glen High was driving the truck with the permission of his employer, C & H Roofing.

In August 1976, Hagen filed a complaint against his co-employee, Glen High, seeking to recover damages for injuries suffered in the accident. Counsel for Hagen sent a letter to Glen High with a copy of the summons and complaint requesting that he forward it to the appropriate insurance carrier. The letter also stated that receipt of the summons and complaint did not constitute legal service and that Glen High was not required to take any action other than notifying the insurance company. Glen High sent a copy of the summons and complaint to the local insurance agency which promptly forwarded it to USF & G.

The claims representative for USF & G indicated that he called the office of C & H Roofing and spoke to Glen High's father, Lee High.[1] In addition to discussing generally the complaint filed by Hagen, they talked specifically about the fact that Glen High had not been formally served and was under no obligation to file an answer to the complaint. The claims representative requested that he be informed if Glen High was thereafter formally served with a sum-

---

1. C & H Roofing was a family corporation in which Glen High was not only an employee but a vice-president, and his father, Lee High, was president.

mons and complaint. Mr. High was also told that there was a provision in the policy issued by USF & G to C & H Roofing which excluded coverage for Hagen's claim. Thereafter the claims representative sent a letter to C & H Roofing advising that there was no coverage under the policy and that the insurer could not be of any assistance concerning Hagen's claim against Glen High. Copies of this letter were sent to Hagen's counsel and to the local insurance agency contacted by Glen High, but in the summary judgment proceedings they denied receiving these copies. Lee High, President of C & H Roofing, also could not recall receiving the letter. No copy was sent directly to Glen High, and he denied receiving any notice from USF & G or from any other source that there was no coverage under its policy for the accident.

In January 1978, a second summons and complaint was issued with regard to Hagen's claim, and formal service was made on Glen High. High stated that he did not recall being served with this summons and complaint, but that if he was, he did not forward it to the local insurance agency or to USF & G, or notify them of any formal service. In March 1978, the trial court entered a default judgment in favor of Hagen and against High in the amount of $225,000.

In September 1978, Hagen filed his first writ of garnishment against USF & G.[2] The tender of issue in connection with this first writ of garnishment alleged that garnishee-defendant USF & G was obligated to and had failed to defend Glen High and had refused to pay the judgment against him. In July 1980, after both Hagen and USF & G had filed motions for summary judgment, Hagen filed and served a second writ of garnishment on USF & G. The tender of issue filed in connection with this second writ alleged a failure to defend Glen High, as well as a breach of duty of due

care, negligence, and bad faith toward Glen High in allowing the default judgment to be entered, thus purportedly making USF & G liable to Glen High for damages.[3] Subsequently, the trial court granted Hagen's motion for summary judgment. Neither the trial court's minute entry nor the subsequently entered judgment stated the legal theory or factual basis upon which the judgment was based. We proceed now to discuss the issues raised in the appeal.

## DUTY TO DEFEND

The comprehensive automobile liability insurance issued by USF & G to C & H Roofing contained a "course of employment" clause which excludes coverage for bodily injury to any employee arising out of and in the course of his employment as follows:

"This insurance does not apply:

\* \* \* \* \* \*

"(c) to bodily injury to any employee of the Insured arising out of and in the course of his employment by the Insured or to any obligation of the Insured to indemnify another because of damages arising out of such injury...."

USF & G argued that pursuant to this exclusion there was no coverage under the policy for the accident and Hagen's injuries and that consequently there was no duty to defend Glen High.

As noted in *Atkins v. Pacific Indemnity Insurance Group,* 125 Ariz. 46, 607 P.2d 29 (App.1979), both divisions of this court have upheld exclusions from coverage for employees of the named insured when the injured party is also an employee. *See Martinez v. United States Fidelity & Guaranty Co.,* 119 Ariz. 403, 581 P.2d 248 (App.1978); *Limon v. Farmers Insurance*

---

**2.** We note that the six month period in which a party may move for relief from judgment pursuant to Rule 60(c), Rules of Civil Procedure, 16 A.R.S., expired shortly before Hagen filed this writ of garnishment.

**3.** In February 1979, Glen High had assigned to Hagen all claims he might have against USF & G for negligently handling the claim against him, for failing to defend him in this suit, and for allowing default judgment to be entered against him.

*Exchange*, 11 Ariz.App. 459, 465 P.2d 596 (1970). Such exclusions do not violate the provisions of the Uniform Motor Vehicle Safety Responsibility Act, A.R.S. §§ 28–1101 to 28–1237 (Safety Responsibility Act). Rather, the exclusions are specifically authorized by § 28–1170(E) which reads as follows:

> "E. The motor vehicle liability policy need not insure liability under any workmen's compensation law nor liability on account of bodily injury to or death of an employee of the insured while engaged in the employment, other than domestic, of the insured ...."

■ Although Hagen contended in the trial court that USF & G's policy required it to provide both liability coverage and a defense to Glen High, on appeal he now admits that the above quoted exclusion is valid under Arizona statutes and that the policy does not provide liability coverage for Hagen's injuries. However, he does urge that, though coverage was excluded, USF & G was required to provide a defense for Glen High and should be held liable for damages because it wrongfully refused to do so.

In making this contention, Hagen does not point to any particular policy language which arguably imposes upon the insurer a contractual duty to defend in litigation

where policy coverage does not exist. Therefore, we will not engage in any exhaustive analysis of the pertinent policy provision.[4] However, we do note that in our opinion the policy provisions do not impose such a duty to defend upon the insurer. Rather, they affirmatively disclose that the duty to defend does not exist independently of the insurer's continued liability for coverage under the policy.

The Arizona Supreme Court has previously considered the question of whether an insurer has a duty to defend based upon the allegations of the complaint when the true facts known to the insurer show that coverage under the policy would be excluded. In *Kepner v. Western Fire Insurance Co.*, 109 Ariz. 329, 509 P.2d 222 (1973), the court held that where the facts alleged in the complaint ostensibly bring the case within policy coverage, but other facts which are not reflected in the complaint plainly exclude policy coverage, the insurer has no duty to defend. This same result has been reached by both divisions of the Court of Appeals. *See Granite State Insurance Co. v. Mountain States Telephone & Telegraph Co.*, 117 Ariz. 432, 573 P.2d 506 (App.1977); *Atkins v. Pacific Indemnity Insurance Group, supra; Manny v. Estate of Anderson*, 117 Ariz. 548, 574 P.2d 36 (App.1977).[5] Hagen seeks to distinguish these decisions because they

---

4. The insurer's duty to defend is imposed by the following policy provision:

    "The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of

    "C. bodily injury or

    "D. property damage

    "to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use, including loading and unloading, of any automobile, *and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage,* even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, *but the Company shall not be obligated* to pay any claim or judgment or *to defend any suit after the applicable limit of the*

*Company's liability has been exhausted* by payment of judgments or settlements."
(Emphasis added).
We point out that a distinction must be drawn between groundless suits, and actions which, even if successful, would not be within policy coverage. *See Pesqueria v. Factory Mutual Liability Insurance Co. of America*, 16 Ariz.App. 407, 493 P.2d 1212 (1972).

5. Hagen cites cases from other jurisdictions such as *Sims v. Illinois National Casualty Co.*, 43 Ill.App.2d 184, 193 N.E.2d 123 (1963). To the extent that they differ from the rule set forth in *Kepner*, they do not reflect the law of Arizona. Likewise, decisions of the Arizona Court of Appeals issued prior to *Kepner*, such as *Lawrence v. Burke*, 6 Ariz.App. 228, 431 P.2d 302 (1967) and *Paulin v. Fireman's Fund Insurance Co.*, 1 Ariz.App. 408, 403 P.2d 555 (1965) have been effectively overruled by *Kepner* on the duty to defend issue.

did not involve automobile liability policies,[6] and thus are not affected by the provisions of A.R.S. § 28–1170. In addressing this question we see no meaningful distinction based on the types of policies involved which would affect our analysis concerning the duty to defend. The analysis set forth in *Kepner* is sound and is equally applicable to all types of liability policies. Additionally, we note that contrary to appellant's argument, *Atkins* did involve an automobile liability policy, and although it did not discuss in detail the position urged in this appeal by Hagen, its holding is directly in point: The "[insurer] is not required to defend [the defendant permissive driver-employee] or to pay any judgment rendered in favor of [the plaintiff survivors of the injured employee] against him." 125 Ariz. at 48, 607 P.2d at 31.

Notwithstanding the above-cited decisions, Hagen urges that the provisions of A.R.S. § 28–1170(B)(2) constitute a legislative mandate which imposes upon an insurer issuing a motor vehicle liability policy a duty to defend an insured who is driving with the permission of the named insured.[7] We find no merit in this contention. The statute does not even address the question of whether an insurer must undertake an obligation to *defend* the named insured or the permissive insured. Rather, the statute requires that the permissive insured, as well as the named insured, shall be covered by insurance "against loss from the liability imposed by law for *damages* ...." (Emphasis added).

We therefore conclude that under the facts of this case the policy issued by USF & G to C & H Roofing did not impose any duty on USF & G to defend Glen High, the permissive driver of the named insured's vehicle.

**6.** *Kepner* involved a homeowners policy; *Granite* involved a contractor's liability policy; and *Manny* involved an aircraft liability policy.

**7.** A.R.S. § 28–1170(B)(2) provides as follows:
"B. The owner's policy of liability insurance must comply with the following requirements:

\* \* \* \* \* \* \*

## IMPLIED DUTY TO NOTIFY

We next consider Hagen's contention that even if the express provisions of the policy validly excluded coverage and thus relieved the insurer of the concomitant duty to defend, USF & G nevertheless had an implied duty to notify its permissive insured, Glen High, that it intended to assert non-liability because of the coverage exclusion provision. Hagen urges that this implied duty was breached in this case. An implied duty of the nature urged by Hagen owed by an insurer to its insured has been generally recognized. Thus, Appleman states:

"In general, there is a duty where an insurer wishes to assert its non-liability to notify its insured without delay."

(Footnote omitted).

17 John Appleman & Jean Appleman, Insurance Law and Practice § 9539, at 378 (1981); *cf.* 7C John Appleman, Insurance Law and Practice § 4693, at 320 (insurer must seasonably disclaim liability and cannot delay decision so long that insured's rights are prejudiced). Failure to act promptly may result in a waiver of the right to deny coverage or an estoppel to assert an exclusion. *See, e.g., United States Fidelity & Guaranty Co. v. Canale*, 257 F.2d 138 (6th Cir.1958); *Allstate Insurance Co. v. Horn*, 24 Ill.App.3d 583, 321 N.E.2d 285 (1974); *Tollefson v. American Family Insurance Co.*, 302 Minn. 1, 226 N.W.2d 280 (1974). At least one court has recognized a cause of action for damages proximately caused by the alleged negligence of an insurer in failing to timely notify an insured of its decision to deny coverage. *See Seward v. State Farm Mutual Automobile Insurance Co.*, 261 F.Supp. 805 (S.D.Fla.1966), aff'd, 392 F.2d 723 (5th Cir.1968).

"2. It shall insure the person named in the policy as the insured and any other person, as insured, using the motor vehicle or motor vehicles with the express or implied permission of the named insured against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of the motor vehicle or motor vehicles ...."

On this appeal USF & G does not actually question the existence of an implied duty on the part of an insurer to notify its *insured* of the insurer's refusal to defend or extend coverage because of a policy exclusion. Rather, USF & G first urges that because of a definitional exclusion in its policy, Glen High, the permissive driver, was not an *insured* so as to create a relationship between USF & G and Glen High sufficient to invoke any implied duty.

■ This definitional provision relates to "persons insured" under the policy and reads as follows:

"None of the following is an Insured:

"(i) any person while engaged in the business of his employer with respect to bodily injury to any fellow employee of such person injured in the course of his employment . . . ."

USF & G argues that pursuant to this clause, even though Glen High was a permissive driver, he did not occupy the status of an insured under this particular policy. In *Martinez* the court discussed this restriction on the definition of "persons insured" and stated that it contravened the provisions of the Safety Responsibility Act and was therefore void. *See also Atkins, supra.* A.R.S. § 28–1170(B)(2) mandates that a policy of motor vehicle liability insurance insure both the named insured and the permissive driver of the insured vehicle. We agree with the distinction made by the *Martinez* and *Atkins* courts between excluding coverage for injuries covered by other remedies, pursuant to § 28–1170(E) for example, and excluding persons as insureds. Therefore, we find that USF & G's definitional exclusion clause is void and that Glen High, as a permissive driver of the vehicle owned by the named insured, was an insured under the policy. Thus, USF & G owed to him the benefit of the duties generally owed by USF & G for the protection of persons insured under its policy.

■ Additionally, we hold that even if the definitional exclusion in USF & G's policy were valid, it would not negate the duty imposed on an insurer to make reasonable efforts to notify persons generally occupying the status of insureds under its policy of its disclaimer of all liability under the policy.[8] As we have previously indicated, this duty has been recognized even when valid coverage exclusions exist. Therefore, there is no need to differentiate between the situation when there is an implied duty to notify insureds generally and when there is such a duty to notify insureds because they are no longer insured pursuant to a policy definition. A definitional exclusion does not qualitatively change the general relationship of insurer and insured created under the policy by Glen High's status as a permissive driver so as to completely abrogate all duties and obligations arising from that general relationship.

■ USF & G next urges that even if Glen High was an insured under its policy, the evidence conflicted as to whether it breached its duty and that therefore summary judgment was inappropriate. In considering this contention, we must first determine the scope of the implied duty imposed upon an insurer to notify its insured of its assertion of non-liability where the true facts show no policy coverage or duty to defend. Without any attempt at close analysis, the cases have generally addressed this question in a loose context of "waiver" or "estoppel," ending with a determination of whether under the particular circumstances involved the insurer should be held liable. These cases consider such factors as prejudice to the insured resulting from a delay in notification and the reasonableness of the delay. In our opinion, the question of the insurer's liability is more correctly determined by the application of ordinary negligence principles. Has the insurer failed to make a reasonable effort to advise its insured of its dis-

---

8. We note that USF & G's definitional exclusion would by its terms be equally applicable to a named insured, as well as to all other insureds.

claimer of all obligations under the policy? Our analysis in this regard is consistent with the Arizona Supreme Court's decisions in *Lindus v. Northern Insurance Co.,* 103 Ariz. 160, 438 P.2d 311 (1968) and *Carpenter v. Superior Court,* 101 Ariz. 565, 422 P.2d 129 (1966). In those cases, the court recognized an insurer's obligation to show that the insured knew of the insurance coverage or that the insurer made a reasonable effort to inform the insured of the policy and its conditions when the insurer claims to have been relieved of liability.

Applying the above standard to the facts of this case, it is apparent that there were several issues of material fact precluding the entry of summary judgment. Conflicting versions of the facts were given by USF & G's claims representative, Lee High and Hagen's attorney concerning both the content and/or existence of telephonic or written communications of the insurer's disclaimer to the insured. Consequently, there are serious conflicts and questions of credibility to be resolved by a finder of fact. If the facts which were before the trial court are considered in favor of USF & G, with all permissive inferences drawn in USF & G's favor, without question a trier of fact could find that USF & G did not breach its duty to notify Glen High.[9]

## LIMITATION ON LIABILITY

Finally, USF & G has raised a limited issue relating to the appropriate measure of damages which might be assessed upon a finding that USF & G breached its duty to make reasonable efforts to advise its insured of its disclaimer of any obligations under the policy. We address this issue since the question will undoubtedly be raised in further proceedings upon remand in the trial court.

The stated limit of coverage in USF & G's policy is $250,000 and judgment was entered against it for $225,000. USF & G urges that even if it is assumed that Glen High was an insured under the USF & G

policy and that USF & G breached a duty to communicate its disclaimer to Glen High, its liability based upon the claimed breach of duty is limited to $15,000, the minimum amount required by the Safety Responsibility Act. In making this argument, USF & G relies upon *Arceneaux v. State Farm Mutual Automobile Insurance Co.,* 113 Ariz. 216, 550 P.2d 87 (1976). In that case, the Arizona Supreme Court discussed whether an exclusion was wholly void or merely invalid to the extent that it conflicted with the public policy enunciated in the Act. The court held that the Act did not apply to mandate coverage provided in the policy in excess of the basic $15,000 limit. Thus, the exclusion involved in *Arceneaux* was effective to exclude coverage under the policy in excess of $15,000 for the injuries suffered by the plaintiff.

Since we have previously found that USF & G would owe the same duty to Glen High even in the absence of the provisions of A.R.S. § 28–1170, we reject USF & G's contention regarding a ceiling on damages pursuant to the Safety Responsibility Act. The parties have not raised any other contentions concerning the appropriate measure of damages, and our rejection of USF & G's contention is not to be considered as any ruling by this court as to the appropriate overall standard to be applied in determining damages in the event of liability in this case.

The judgment entered by the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion.

EUBANK and MEYERSON, JJ., concur.

9. The entry of summary judgment would have been improper upon the state of the record before the trial court even if, contrary to our

holding, the duty of the insurer to communicate its disclaimer to the insured was absolute.