202 P.3d 472

**PENN–AMERICA INSURANCE COMPANY, a Pennsylvania corporation, Plaintiff/Counter–Defendant/ Appellee,**

v.

**Alice SANCHEZ individually and as Conservator for the Estates of Maria Guadalupe Leon, Juanita P. Hernandez, Crystal M. Camacho and Alice Francisca Ramirez; Jessica Leon; Blanca P. Leon; Esmeralda Leon; Carmen Ramirez; Maria Esther Gonzalez; Verta Alisia Arias as Conservator of the Estate of Jacob Ramirez; Manuela Ibarra and Jose Luis Gonzalez, Counter–Claimants/Appellants.**

No. 1 CA–CV 06–0792.

Court of Appeals of Arizona, Division 1, Department E.

June 17, 2008.

Review Withdrawn Feb. 10, 2009.

Doyle Berman Murdy PC By William H. Doyle, Teresa Hayashi Wales, D. Andrew Bell, Phoenix, Attorneys for Plaintiff/Counterdefendant/Appellee.

Richard Sheinson, Phoenix, Attorney for Appellant Gonzalez/Arias.

Lucia Stark Williamson LLP By Michael P. Stark, Curt W. Clausen, Phoenix, Co–Counsel for Sanchez/Leon/Ramirez/Ibarra/Gonzalez.

Montoya Jimenez PC By Augustine B. Jimenez, III, Phoenix, Co–Counsel for Sanchez/Leon/Ramirez/Ibarra/Gonzalez.

James F. Brook and Associates By James F. Brook John N. Vingelli, Scottsdale, Co–Counsel for Sanchez/Leon/Ramirez/Ibarra/Gonzalez.

## OPINION

GEMMILL, Chief Judge.

¶ 1 If a liability insurance company unequivocally defends its insured for 10 months before attempting to reserve the right to contest coverage, what factors must be considered in determining if the insurance company has lost the right to assert its coverage defenses? The trial court granted summary judgment to the insurer after determining that the insured had not been prejudiced by the delayed reservation of rights. For the reasons that follow, we find that genuine issues of material fact preclude summary judgment, and we therefore reverse and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

### The Underlying Accident and Wrongful Death Claims

¶ 2 Appellants Alice Sanchez, Jessica Leon, Blanca P. Leon, Esmeralda Leon, Carmen Ramirez, Maria Esther Gonzalez, Verta Alisia Arias, Manuela Ibarra, and Jose Luis Gonzalez, appeal from the trial court's summary judgment in favor of Appellee Penn–America Insurance Company ("Penn–America").

¶ 3 Inside Arizona Delivery Leasing, Inc. ("Inside Arizona") operates a warehouse and serves as a transportation intermediary, transporting or arranging for the transport of commercial goods. On or about June 30, 2000, Inside Arizona arranged for Vasile Cusmir, an independent owner-operator, to pick up a load of goods from its warehouse in Phoenix and deliver them to Tucson. On the return trip to Phoenix, Cusmir was involved in a traffic accident resulting in the deaths of three people.

¶ 4 Appellants, as statutory beneficiaries of the decedents, filed wrongful death actions alleging that Inside Arizona was vicariously or jointly liable for Cusmir's conduct because

Cusmir was Inside Arizona's joint venturer, partner, and/or employee at the time of the accident.[1]  Inside Arizona notified its insurance agent, Bowman & Associates Insurance Agency, Inc. ("Bowman"), of the claims on December 18, 2001.  Bowman, in turn, tendered the defense to Penn–America, Inside Arizona's commercial general liability ("CGL") carrier.

¶ 5 The applicable Penn–America CGL policy provided coverage in the amount of $1,000,000 per occurrence.  However, the policy contains an exclusion of any coverage for "[b]odily injury" or "property damage" arising out of the "ownership, maintenance, use or entrustment to others" of an automobile ("Exclusion g").[2]

¶ 6 In December 2001, Penn–America's claims adjuster, Larry Wastle, contacted Bowman to determine whether the accident might be covered under an automobile insurance policy.  Wastle was informed that Inside Arizona had automobile insurance through National American Insurance Company of California ("NAICC").[3]  Wastle determined, however, there was "sufficient information or allegations to trigger [Penn–America's] duty to defend," and he retained the law firm of Jones, Skelton & Hochuli ("JS & H") to defend Inside Arizona.  Penn–America initially defended Inside Arizona without a reservation of rights.

¶ 7 JS & H advised Wastle that Inside Arizona had a federal motor carrier's license and that its operations included both intrastate and interstate deliveries.  By memorandum provided to Wastle in June 2002, JS & H concluded that Cusmir could be deemed a statutory employee of Inside Arizona under the Federal Motor Carrier Safety Regulations ("FMCSRs"), thereby making Inside

Arizona vicariously liable for Cusmir's actions, if the court found that a trip lease existed at the time of the accident.

¶ 8 In August 2002, JS & H moved for summary judgment on behalf of Inside Arizona in the federal wrongful death action.  In September 2002, the Statutory Beneficiaries responded and cross-moved for summary judgment, arguing that Inside Arizona was vicariously liable to them for Cusmir's negligence.

¶ 9 Shortly thereafter, Wastle received a report from JS & H concerning the depositions of Inside Arizona's owner, Kevin Martin, and its traffic manager, Ian Scott.  In the report, JS & H indicated that both Martin's and Scott's testimony suggested Inside Arizona was operating "more like a motor carrier than as a broker or freight forwarder," which would support a finding that Inside Arizona was a lessee of Cusmir's truck— and thus liable for his conduct—at the time of the accident.  JS & H informed Wastle that Inside Arizona's chances of prevailing on summary judgment were reduced because of this trip leasing issue.

¶ 10 On September 30, 2002, Wastle contacted Michael Flood of Jennings, Strauss & Salmon to request a second opinion concerning the applicability of the FMCSRs.  On the same day, discovery closed in the federal wrongful death action.  The following day, the Statutory Beneficiaries made a written demand to Inside Arizona, proposing to settle all claims for $925,000.

¶ 11 On October 11, 2002, Flood issued his opinion letter concerning the applicability of the FMCSRs and advised Wastle that the court would likely find the regulations applicable.  Flood also advised Wastle that it would be "prudent for [Inside Arizona] to

---

1.  Appellants will be referred to in this opinion as "Statutory Beneficiaries." Ultimately, three separate lawsuits were filed, one in federal court (Case No. CV01–00320 PHX PGR in the United States District Court for the District of Arizona) and two in state court (Case Nos. CV2002–012398 and CV2002–001841 in the Maricopa County Superior Court).

2.  Another exclusion in the Penn–America CGL policy purports to limit any possible coverage for losses arising out of the "maintenance or use" of an automobile to excess coverage ("Exclusion

b''). Damages for "bodily injury" under the Penn–America CGL policy includes damages claimed for death arising out of "damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury.' "

3.  The NAICC policy provided commercial automobile and vehicular liability coverage with limits of $1,000,000 per occurrence, subject to the terms, conditions and other provisions of the policy.

accept the [Statutory Beneficiaries' settlement] demand and resolve the claims at this juncture" or, alternatively, Penn–America should provide Inside Arizona with a waiver of coverage limits and proceed with its defense.

¶ 12 On October 15, 2002, Penn–America tendered the defense of Inside Arizona to NAICC.[4] The following day, Wastle issued a reservation of rights letter to Inside Arizona based upon Exclusions b and g in the Penn–America policy. Wastle explained that Penn–America's reservation of rights was based on the fact that the Statutory Beneficiaries had "alleg[ed] that the relationship between Cusmir and Inside Arizona [was] governed by Federal ICC regulations" and had "attempted to develop a business relationship ... and/or an employer/employee relationship in order to develop a theory of vicarious liability against Inside Arizona." Penn–America continued to provide a defense to Inside Arizona under the reservation of rights.

¶ 13 On November 22, 2002, Inside Arizona demanded that PennAmerica accept the Statutory Beneficiaries' $925,000 settlement demand. However, Penn–America advised counsel for NAICC that Penn–America would not contribute any money toward the Statutory Beneficiaries' settlement demand.

¶ 14 In a December 5, 2002 letter to JS & H, the Statutory Beneficiaries renewed their $925,000 settlement demand and extended the deadline for acceptance to January 16, 2003. The letter reiterated the possibility of the two insurers splitting the cost of the settlement. JS & H demanded, on behalf of Inside Arizona, that Penn–America accept the settlement demand.

¶ 15 On January 13, 2003, counsel for the Statutory Beneficiaries informed Penn–

America that if it did not withdraw its reservation of rights and if NAICC did not accept the tender of defense and agree unconditionally to provide coverage by January 16, 2003, the Statutory Beneficiaries would enter into a *Morris* agreement with Inside Arizona.[5]

¶ 16 Inside Arizona entered into a *Morris* agreement with the Statutory Beneficiaries on January 17, 2003, stipulating to a $4.3 million judgment and assigning any claims it might have against Penn–America to the Statutory Beneficiaries in exchange for a covenant not to execute. In addition, NAICC reached a settlement with the Statutory Beneficiaries whereby it paid them $462,500 in conjunction with releases by the Statutory Beneficiaries of NAICC from any further claims. At the time of the settlement, NAICC had not denied coverage or reserved its rights, nor had it committed to provide coverage.

**The Declaratory Judgment Action**

¶ 17 On December 10, 2002, Penn–America filed a declaratory judgment action against Inside Arizona and NAICC, seeking a judicial declaration as to its coverage obligations.[6] The trial court permitted the Statutory Beneficiaries to intervene as real parties in interest after they had been assigned any claims Inside Arizona might have against Penn–America. The Statutory Beneficiaries then answered the complaint and filed a counterclaim alleging bad faith on the part of Penn–America.

¶ 18 The parties submitted cross-motions for summary judgment. Penn–America argued that its CGL policy excluded coverage of the underlying automobile accident or, alternatively, that its policy provided only excess coverage and was not implicated because the Statutory Beneficiaries' settlement demand did not exceed NAICC's policy lim-

---

**4.** Wastle indicated in his letter to NAICC that "we have recently been advised that ICC regulations may apply to the haul which would place Inside Arizona in the position of a lessee of the 'auto' raising a coverage concern as it applies to the CGL policy."

**5.** In a *"Morris* agreement," an insured being defended under a reservation of rights may stipulate to a judgment (or withdraw its answer and allow default) and assign its rights under the

policy to the plaintiff in exchange for the plaintiff's covenant not to execute the judgment against the insured. *See United Servs. Auto. Ass'n v. Morris,* 154 Ariz. 113, 119, 741 P.2d 246, 252 (1987); *see also Waddell v. Titan Ins. Co., Inc.,* 207 Ariz. 529, 531 n. 1, ¶ 4, 88 P.3d 1141, 1143 n. 1 (App.2004) (describing similar agreements).

**6.** Penn–America voluntarily dismissed NAICC from the lawsuit.

its. The Statutory Beneficiaries, on the other hand, argued that Penn–America was estopped from asserting any coverage defenses because its reservation of rights was untimely.

¶ 19 Following oral argument in April 2005, the trial court issued a minute entry order denying both motions for summary judgment. The court found that the Penn–America policy excluded automobile coverage and provided only excess coverage for losses arising out of the use of an automobile. The court also determined that several genuine issues of material fact existed, including: whether Inside Arizona suffered any actual prejudice or damages; whether Penn–America's interests "would have been furthered by a less than vigorous defense"; and whether Inside Arizona was left with "an adequate opportunity to defend its case" as a result of the timing of Penn–America's reservation of rights. Penn–America moved for reconsideration of the trial court's ruling, but that motion was denied.

¶ 20 The parties conducted additional discovery and the case was transferred to another superior court judge. In March 2006, Penn–America filed a renewed motion for summary judgment, arguing that new, uncontroverted facts established that Inside Arizona was neither prejudiced nor damaged by Penn–America's conduct. Specifically, Penn–America submitted an affidavit from the President of Inside Arizona, who stated that Inside Arizona had suffered no "detrimental effects" as a result of the *Morris* agreement or any actions of Penn–America. Penn–America also submitted the affidavit of the JS & H attorney primarily responsible for Inside Arizona's defense, stating that Penn–America had not placed any limitations on his defense of Inside Arizona.

¶ 21 Following oral argument in May 2006, the trial court issued a minute entry order granting Penn–America's renewed motion for summary judgment. The trial court found that the record "continue[d] to lack a showing by clear and satisfactory proof that Inside Arizona suffered actual and substantial damages." The trial court also found that "there is simply no evidence of a less than vigorous defense."

¶ 22 Judgment was entered in October 2006. The court also awarded Penn–America attorneys' fees in the amount of $50,000.00 and costs in the amount of $3,174.80. The Statutory Beneficiaries timely filed a notice of appeal. We have jurisdiction in accordance with Arizona Revised Statutes ("A.R.S.") section 12–2101(B) (2003).

## ANALYSIS

¶ 23 The Statutory Beneficiaries argue that the trial court erred in granting summary judgment to Penn–America because there were disputed questions of material fact precluding summary judgment. Summary judgment may be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c). In reviewing a motion for summary judgment, we independently review whether any genuine issues of material fact exist and whether the trial court properly applied the law. *Urias v. PCS Health Sys., Inc.*, 211 Ariz. 81, 85, ¶ 20, 118 P.3d 29, 33 (App.2005). We view the facts and any reasonable inferences drawn from those facts in the light most favorable to the party against whom judgment was entered. *Maycock v. Asilomar Dev., Inc.*, 207 Ariz. 495, 496, ¶ 2, 88 P.3d 565, 566 (App.2004).

¶ 24 The parties do not dispute that the Penn–America CGL policy excludes coverage for the underlying claims arising out of an automobile accident. The Statutory Beneficiaries contend, however, that Penn–America has waived or is estopped from asserting any coverage defenses because its reservation of rights was untimely.

¶ 25 "An insurer with a coverage defense must defend its insured under a properly communicated reservation of rights or it will lose its right to later litigate coverage." *Morris*, 154 Ariz. at 116, 741 P.2d at 249; *Ogden v. U.S. Fid. & Guar. Co.*, 188 Ariz. 132, 136, 933 P.2d 1200, 1204 (App.1996) (same). If an insurer provides a defense to its insured under a reservation of rights, it must "communicate its reservation of rights to the insured to inform the insured of its position as to coverage." *Mut. Ins. Co. of*

*Ariz. v. Bodnar*, 164 Ariz. 407, 412, 793 P.2d 560, 565 (App.1990). Its failure to do so *"promptly* may result in a waiver of the right to deny coverage or an estoppel to assert an exclusion." *Hagen v. U.S. Fid. & Guar. Ins. Co.*, 138 Ariz. 521, 525, 675 P.2d 1340, 1344 (App.1983) (emphasis added), *approved by* 138 Ariz. 491, 675 P.2d 1310 (1984).

¶ 26 This court has previously explained the importance of a timely reservation of rights:

> An insured is entitled to know *early in the litigation process* whether the insurer intends to honor [its] duty [to defend] in order that the insured may take steps to defend himself. If in fact the insurer undertakes that defense the insured may reasonably rely upon the nonexistence of policy defenses. To hold otherwise would allow the insurer to conduct the defense of the action without the knowledge of the insured that a conflict of interest exists between itself and the insurer. The conflict is that the insurer retains a policy defense which would relieve the insurer of all liability while simultaneously depriving the insured of the right to conduct his own defense. It is the reliance of the insured upon the insurer's handling of the defense and the subsequent prejudice which gives rise to an estoppel in the first instance against the insurer from raising policy defenses.

*Equity Gen. Ins. Co. v. C & A Realty Co., Inc.*, 148 Ariz. 515, 518, 715 P.2d 768, 771 (App.1985) (emphasis added) (citations omitted).

¶ 27 Factors to consider when determining whether an insurer has lost its right to assert coverage defenses because of a delayed reservation of rights include the potential prejudice to the insured and the reasonableness of the delay:

Without any attempt at close analysis, the cases have generally addressed this question in a loose context of "waiver" or "estoppel," ending with a determination of whether under the particular circumstances involved the insurer should be held liable. These cases consider such factors as *prejudice to the insured* resulting from a delay in notification and *the reasonableness of the delay.*

*Hagen,* 138 Ariz. at 526, 675 P.2d at 1345 (emphasis added). This court in *Hagen* further explained that ordinary negligence principles are applicable:

> In our opinion, the question of the insurer's liability is more correctly determined by the application of *ordinary negligence principles.* Has the insurer failed to make a *reasonable* effort to advise its insured of its disclaimer of all obligations under the policy?

*Id.* at 526–27, 675 P.2d at 1345–46 (emphasis added). The Arizona Supreme Court expressly approved the analysis in *Hagen:*

> Because we do agree with the court's legal analysis in the case at bench, and because the opinion deals with several issues not previously settled in this State, we hereby adopt the opinion of the court of appeals and indicate our agreement with the legal principles set forth in that opinion.

138 Ariz. at 491, 675 P.2d at 1310.[7]

¶ 28 Penn–America declined to undertake a "detailed analysis of the reasonableness of its actions" in its answering brief, arguing that reasonableness is not an element of an estoppel claim. Although reasonableness may not be an element of an ordinary estoppel claim, the court in *Hagen* explained that reasonableness is a factor to be considered in this particular context. 138 Ariz. at 526–27, 675 P.2d at 1345–46. We do not, however, understand *Hagen* to establish that unrea-

---

7. The Statutory Beneficiaries also argue that prejudice should be presumed when an insurer delays in reserving its rights to contest coverage. Such a rule would, in our view, be inconsistent with these appellate opinions, and we therefore decline to adopt a presumption that an insured is automatically prejudiced by a delayed reservation of rights. *See also Hoyt v. St. Paul Fire & Marine Ins. Co.*, 607 F.2d 864, 867 (9th Cir.1979) (applying Arizona law, insurer was not estopped

to deny coverage despite having defended without reservation of rights where "[i]t does not appear from [the] facts that [the insured] was prejudiced in any way"); LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 239: 112 (3d ed. 2005) ("Prejudice in fact must be shown, rather than mere reliance on a conclusive presumption of prejudice from the very act upon which estoppel is based.").

sonable delay by the insurer that does *not* result in prejudice to the insured will support the loss of coverage defenses. *See Hoyt,* 607 F.2d at 867.[8]

¶ 29 Accordingly, unreasonable delay without prejudice to the insured will not cause loss of the insurer's coverage defenses. Prejudice to the insured is required. With these conclusions, we have proceeded as far as necessary to resolve this appellate issue. We leave to another day the further articulation of the significance of unreasonable delay compared with prejudice to the insured.

¶ 30 The Statutory Beneficiaries assert unreasonable delay by Penn–America in issuing its reservation of rights and resulting prejudice to Inside Arizona. We agree that a genuine issue of material fact exists regarding prejudice to the insured, thereby precluding summary judgment. We also agree that a genuine issue of material fact exists regarding the reasonableness of the delay.

### Fact Question Regarding Unreasonable Delay

■ ¶ 31 The underlying wrongful death litigation arose out of a motor vehicle accident. Inside Arizona was insured by Penn–America under a CGL policy and by NAICC under a business auto policy. The complaints of the Statutory Beneficiaries alleged that the driver Cusmir was legally an agent or employee of Inside Arizona and that Inside Arizona was vicariously liable for Cusmir's negligence in causing the accident and resulting deaths. Penn–America recognized these basic facts but nonetheless undertook to unequivocally defend Inside Arizona, without a reservation of rights, under the CGL policy. Over the course of the next 10 months, Penn–America received additional information indicating that the accident was Cusmir's fault and the Statutory Beneficiaries were developing facts to support the conclusion that Inside Arizona was the lessee of Cusmir's truck and Cusmir's statutory employer. On this record, a genuine issue of

material fact exists as to whether Penn–America unreasonably delayed in attempting to reserve its right to contest coverage under its CGL policy for this liability arising out of the use of an automobile. *See In re Estate of Jung,* 210 Ariz. 202, 207, ¶ 28, 109 P.3d 97, 102 (App.2005) ("[I]ssues of reasonableness are generally questions of fact."); *Trustmark Ins. Co. v. Bank One, Ariz., NA,* 202 Ariz. 535, 541, ¶ 25, 48 P.3d 485, 491 (App.2002) (noting that "determinations of reasonableness are usually questions of fact").

### Fact Question Regarding Prejudice to the Insured

¶ 32 We also conclude that this record presents a genuine issue of material fact regarding whether the delayed reservation of rights caused prejudice to the insured.

¶ 33 The defense of Inside Arizona was not tendered to the automobile liability carrier, NAICC, until 10 months after the lawsuits began, at a time when discovery was closed in the federal court action and cross-motions for summary judgment were pending. The Statutory Beneficiaries claim Inside Arizona was prejudiced by Penn–America's delay because NAICC, the automobile liability insurer, refused to commit to coverage. Penn–America argues that it was not responsible for tendering the defense to NAICC, and that there is no admissible evidence in the record to support that NAICC refused to commit to coverage in any event.

■ ¶ 34 According to Penn–America, Inside Arizona could have tendered the defense to NAICC at any point in time, and the applicable NAICC policy affirmatively placed the burden on Inside Arizona to provide "prompt notice of the 'accident' or 'loss.'" However, the President of Inside Arizona testified at his deposition as follows:

> Q: It was your understanding that when [JS & H] was hired by Penn–America, Penn–America was not disputing that

---

8. Additionally, if we apply "ordinary negligence principles" as suggested by the court in *Hagen,* we note the tort of negligence is not completed without injury or damage, which in this context means prejudice to the insured. *See Ontiveros v. Borak,* 136 Ariz. 500, 504, 667 P.2d 200, 204

(1983) ("[N]egligence requires proof of a duty owed to the plaintiff, a breach of that duty, an injury proximately caused by that breach, and damage."); *Mein v. Cook,* 219 Ariz. 96, 100 ¶ 20, 193 P.3d 790, 794–95 (App.2008) ("Damage or injury is necessary to complete the tort.").

they would provide you with coverage.... Am I right about that?

A: Yes.

Q: Your belief was that Penn–America was providing coverage as well as a defense?

A: Yes.

Q: Is it fair to say that you assumed that Penn–America had made the decision that it was the proper insurance company to be providing you with a defense and providing you with coverage for the claim that you had been sued on?

A: Yes.

Q: For the next 10 months, did you have any reason to think that you needed to be trying to find out if there was another insurance company that was a better insurance company to be providing you a defense than Penn–America?

A: No.

¶ 35 Viewing this evidence in the light most favorable to the Statutory Beneficiaries, as we must in this context, we believe a trier of fact could conclude that Inside Arizona relied on Penn–America's unconditional acceptance of coverage when it failed to pursue other potentially applicable coverage. *See Equity Gen.,* 148 Ariz. at 518, 715 P.2d at 771 ("If ... the insurer undertakes [the] defense the insured may reasonably rely upon the nonexistence of policy defenses."). Thus, Penn–America's claim that the timing of its reservation of rights had "nothing to do with the timing of the tender of Inside Arizona's defense to NAICC" is unpersuasive.

¶ 36 Penn–America nevertheless contends that the Statutory Beneficiaries failed to produce any admissible evidence to establish that NAICC actually refused to commit to coverage. The Statutory Beneficiaries rely upon three letters authored by counsel for NAICC, which they argue constitute "evidence [of] NAICC's refusal to commit to coverage as a result of Penn–America's untimely reservation of rights." Two of the letters, in particular, describe NAICC's concerns that it may be prejudiced by the "late notice situation."

¶ 37 Penn–America argues that these letters constitute inadmissible hearsay. The Statutory Beneficiaries contend that the letters are not hearsay and not offered for their truth. We agree with the Statutory Beneficiaries.

¶ 38 The position of NAICC, as expressed by its attorney in these letters, does not constitute inadmissible hearsay in this context. "If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay.... The effect is to exclude from hearsay the entire category of 'verbal acts' and 'verbal parts of an act,' in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights." FED.R.EVID. 801(c) advisory committee's note; *see also Barnette v. McNulty,* 21 Ariz.App. 127, 130, 516 P.2d 583, 586 (1973) (holding that out of court statements were not hearsay because the statements concerned an issue of the case and the "communications were *verbal facts to be proved as any other fact* and therefore it was not error to permit such testimony.") (emphasis added); *State v. Pelton,* 197 Neb. 412, 249 N.W.2d 484, 487 (1977) ("If an utterance is itself an operative fact, the utterance is not hearsay."); *Case Corp. v. Hi–Class Bus. Sys. of Am., Inc.,* 184 S.W.3d 760, 782 (Tex.App.2005) (stating that evidence was non-hearsay because the out of court statement had legal significance and was not being offered for the truth of the matter asserted).

¶ 39 Additionally, Penn–America had agreed that these letters did not need to be under oath and that no objection was being asserted in that regard. We conclude, for all of these reasons, that these letters from NAICC's counsel were appropriately before the trial court and constituted evidence of NAICC's position regarding coverage.

¶ 40 Even though NAICC provided a policy of automobile liability insurance to Inside Arizona, the defense of Inside Arizona was not tendered to NAICC until 10 months after the litigation began and after discovery in one of the lawsuits had closed. NAICC stat-

ed through its counsel that it was neither accepting nor rejecting coverage, but rather it was investigating to determine if it had been prejudiced by the late notice and tender.[9] *Cf. Lindus v. N. Ins. Co. of N.Y.*, 103 Ariz. 160, 164, 438 P.2d 311, 315 (Ariz.1968) (indicating that absent actual prejudice to the insurer, an insured's delayed notice to the insurer will not bar the insured's claim); *Salerno v. Atl. Mut. Ins. Co.*, 198 Ariz. 54, 60, ¶ 24, 6 P.3d 758, 764 (App.2000) (same).

¶ 41 On this record, an inference favorable to the Statutory Beneficiaries may be permissibly drawn that if NAICC had been notified several months earlier, it would have in due course accepted coverage and provided $1,000,000 of liability protection for Inside Arizona. A trier of fact could determine that Penn–America's 10 months of unequivocal defense lulled Inside Arizona into a false sense of security and caused or contributed to the late tender to NAICC, with the result that when the Statutory Beneficiaries offered to settle for less than $1,000,000, Inside Arizona was in a very vulnerable position. At that juncture, Penn–America had asserted that it provided no coverage because this was an automobile loss, and the automobile liability carrier, NAICC, refused to accept or deny coverage because Inside Arizona's defense had just been tendered to it. These facts, if found by the trier of fact, constitute sufficient prejudice to the insured to create an estoppel preventing Penn–America from asserting its coverage defenses.

### When Prejudice to the Insured is Measured

¶ 42 Penn–America further argues, however, that ultimately Inside Arizona suffered no prejudice and no harm. After Inside Arizona entered into the *Morris* agreement with the Statutory Beneficiaries, the covenant not to execute any judgment against Inside Arizona provided substantial protection and the company president testified that the company had suffered no harm to its credit or its business. The trial court agreed with Penn–America. We are presented with the question, therefore, of whether the prejudice to the insured is to be measured when the insurer reserves its right to deny coverage or after the insured has achieved substantial protection by entering into a *Morris* agreement.

■ ¶ 43 We hold that the question of prejudice to the insured, caused by a delayed reservation of rights, must be measured after issuance of the reservation of rights but prior to any *Morris* agreement. An insurer is not relieved of the consequences, if any, of its untimely reservation of rights by virtue of the insured's good fortune in obtaining financial protection as the result of a *Morris* agreement. *Cf. Pueblo Santa Fe Townhomes Owners' Ass'n, Inc. v. Transcon. Ins. Co.*, 218 Ariz. 13, 21, ¶ 29, 178 P.3d 485, 493 (App.2008) ("Simply put, an insurer that has failed to promptly reserve its rights does not escape the consequences of that failure simply because its insured assigns its coverage rights to another."). To hold otherwise would discourage tort plaintiffs from entering into *Morris* agreements and thereby undermine the protection available to insureds by means of such agreements, a result inconsistent with our supreme court's approval of these agreements. *Cf. State Farm Mut. Auto. Ins. Co. v. Paynter*, 122 Ariz. 198, 203, 593 P.2d 948, 953 (App.1979) (rejecting an insurer's argument that a covenant not to execute in a *Damron*[10] agreement relieved the insurer of any obligation to pay the judgment entered against its insured, and explaining that "[w]e agree with Paynter that were we to sustain State Farm's position in this regard we would wholly undermine the

---

**9.** The first letter indicated that "NAICC was not [yet] in a position to accept or reject the loss given the late notice" and confirmed that "NAICC has not denied coverage at the present time." The second letter, while specifically identifying the various ways in which NAICC believed it was prejudiced by Penn–America's delay, likewise indicated that NAICC had not yet had sufficient time to evaluate the underlying case. The final letter, which memorialized the terms of NAICC's settlement with the Statutory Beneficiaries, indicated that "[b]ecause of our agreement, there is no need for NAICC to proceed forward with any type of statement regarding coverage."

**10.** *Damron v. Sledge*, 105 Ariz. 151, 152–53, 460 P.2d 997, 998–99 (Ariz.1969); *see also Safeway Ins. Co. v. Guerrero*, 210 Ariz. 5, 7 n. 1, ¶ 1, 106 P.3d 1020, 1022 n. 1 (2005) (discussing differences between *Morris* and *Damron* agreements).

purpose of such agreements, and our holding would be inconsistent with our Supreme Court's approval of them").

¶ 44 For these reasons, we conclude that summary judgment was inappropriately granted in favor of Penn–America.

### Fact Questions Also Preclude Summary Judgment in Favor of Statutory Beneficiaries

¶ 45 The Statutory Beneficiaries contend that we should order summary judgment in their favor because the delay was unreasonable as a matter of law and the prejudice to the insured is established as a matter of law. We disagree. As already noted, issues of reasonableness are usually questions of fact for the trier of fact. *See Jung*, 210 Ariz. at 207, ¶ 28, 109 P.3d at 102; *Trustmark*, 202 Ariz. at 541, ¶ 25, 48 P.3d at 491. Penn–America's claims adjuster Wastle explained his thinking as discovery unfolded and the case developed. On this record we decline to find that Penn–America's delay was unreasonable as a matter of law. Moreover, unreasonable delay, standing alone, will not result in the loss of an insurer's coverage defenses. *See* discussion *supra* ¶¶ 27–29 and accompanying notes.

¶ 46 Additionally, on the issue of prejudice to Inside Arizona from the delayed reservation, the facts and reasonable inferences will support a finding of prejudice to the insured by a reasonable trier of fact. But this record does not establish as a matter of law that NAICC, if notified earlier, would have acknowledged $1,000,000 of liability coverage for Inside Arizona and would have successfully protected Inside Arizona by achieving a settlement within policy limits.

¶ 47 For these reasons, the Statutory Beneficiaries are not entitled to summary judgment in their favor.

### CONCLUSION

¶ 48 We reverse the summary judgment entered in favor of Penn–America, including the award of attorneys' fees and costs, and we remand for further proceedings not inconsistent with this opinion.

CONCURRING: PATRICK IRVINE, Presiding Judge and SHELDON H. WEISBERG, Judge.